IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

CHRIS HUNICHEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Atonomi LLC, a Delaware LLC, CENTRI Technology, Inc., a Delaware Corporation, Vaughan Emery, David Fragale, Rob Strickland, Kyle Strickland, Don Deloach, Wayne Wisehart, Woody Benson, Michael Mackey, James Salter, and Luis Paris,

Defendants.

No. 2:19-cv-00615

CLASS ACTION COMPLAINT
JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other allegations, based on investigation of counsel. This investigation included, inter alia, a review of public statements and disclosure materials prepared by Defendants; media reports; interviews; social media; and other information concerning Defendants. The investigation of the facts pertaining to this case is continuing. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

CLASS ACTION COMPLAINT AND JURY DEMAND - 1
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## I. INTRODUCTION

1. This suit seeks the return of approximately $25,000,000, together with statutory interest and attorneys' fees, which Defendants procured from investors through the sale of unregistered securities in violation of the Washington Securities Act, Chapter 21.20 RCW (the "Act").

2. The Act forbids the sale of unregistered securities, and allows purchasers of unregistered securities to assert joint and several liability against anyone whose acts were substantial contributing factors in the sales transaction.

3. The Act requires sellers and controllers to return the purchase price of unregistered securities plus statutory 8% interest from the date of sale, together with reasonable attorneys' fees.

4. In spring 2018, Atonomi LLC ("Atonomi"), a wholly owned subsidiary of CENTRI Technologies, Inc. ("CENTRI"), raised approximately $25,000,000 through the sale of unregistered securities in through an "Initial Coin Offering," or "ICO."

5. Atonomi as seller, and the remaining defendants, as persons who substantially contributed to the Atonomi ICO, thereby violated the WSA through their sale of unregistered securities they called "coins," or "tokens," which they sold in the ICO.

6. The securities sold in the ICO were neither registered as required under the Act, nor subject to any exemption from registration.

7. The ICO resulted in the sale of approximately $25,000,000 in unregistered securities, and therefore every defendant is jointly and severally liable for $25,000,000 in refunded sales proceeds, together with 8% interest dating from the spring 2018 sale, and attorneys' fees.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs and at least one member of the putative class of plaintiffs is a citizen of a State different from any defendant.

Class Action Complaint and Jury Demand - 2
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

9. This Court has also subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs and at least one member of the putative class of plaintiffs is a foreign citizen or subject of a foreign state and any defendant is a citizen of a State.

10. This Court has personal jurisdiction over Atonomi and CENTRI because both corporate entities reside in this state by virtue of each maintaining its principal place of business in this state.

11. This Court has personal jurisdiction over certain among the individual defendants because they reside in this state.

12. This Court has personal jurisdiction over all individual defendants because, as described in greater detail below, each individual defendant purposely availed himself of the privilege of conducting activities within this state, thus invoking the benefits and protection of the laws of Washington.

13. This Court has personal jurisdiction over all individual defendants because, as described in greater detail below, each individual defendant committed activities in violation of the Act in this state and judicial district and/or directed at residents of this state, and thereby caused harm within this state and to residents of this state.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because both corporate defendants Atonomi and CENTRI reside in this state and judicial district by virtue of each maintaining its principal place of business in this state and judicial district.

### III. PARTIES

15. Plaintiff Chris Hunichen invested $191,250 in the Atonomi ICO on February 22, 2018.

16. Defendant Atonomi is a Delaware Limited Liability Company with a principal place of business in Seattle, Washington.

CLASS ACTION COMPLAINT AND JURY DEMAND - 3
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

17. Defendant CENTRI is a Delaware corporation with a principal place of business in Seattle, Washington.

18. Defendant CENTRI is the parent company and sole owner of Atonomi LLC.

19. Defendant Vaughan Emery ("Emery") is the founder and former CEO of Atonomi, a Director of Atonomi, and currently is the self-described "evangelist" for Atonomi. Emery is also the founder and former CEO of Defendant CENTRI. Emery is a Washington resident.

20. Defendant David Fragale was at all relevant times the Chief Product Officer of Atonomi, and is a co-founder of Atonomi.

21. Defendant Robert Strickland is the current CEO of Atonomi and CENTRI. During the ICO, Robert Strickland was a Director of Atonomi.

22. Defendant Kyle Strickland is the "community manager" for Atonomi, and in that role directed and continues to direct numerous company communications with investors and prospective investors about the ICO.

23. Defendant Don Deloach was at all relevant times the President of Atonomi and a Director of Atonomi, as well as President and COO of CENTRI.

24. Defendant Wayne Wisehart was at all relevant times a Director of both Atonomi and CENTRI. Wisehart is a Washington resident.

25. Defendant Woody Benson was at all relevant times a Director of Atonomi.

26. Defendant Michael Mackey was at all relevant times the Chief Technology Officer of both Atonomi and CENTRI. Mackey is a Washington resident.

27. Defendant James Salter was at all relevant times the Director of Marketing for both Atonomi and CENTRI. Salter is a Washington resident.

28. Defendant Luis Paris was at all relevant times the Principal R&D Engineer of both Atonomi and CENTRI. Paris is a Washington resident.

CLASS ACTION COMPLAINT AND JURY DEMAND - 4
No. 2:19-CV-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## IV.   FACTS

### A.   Blockchains And ICOs

29. As the SEC has explained, a "blockchain is an electronic distributed ledger or list of entries – much like a stock ledger – that is maintained by various participants in a network of computers. Blockchains use cryptography to process and verify transactions on the ledger, providing comfort to users and potential users of the blockchain that entries are secure."[1] Well-known examples of blockchain technology underly the Bitcoin and Ethereum virtual currencies.

30. Atonomi advertised that the project for which it sold "tokens" or "coins" would use blockchain technology that it intended to develop after the sale of the tokens.

31. A blockchain can be shared and accessed by anyone with appropriate permissions using the same software protocol. For example, to operate the Bitcoin shared ledger, computers must run the same version of the Bitcoin protocol. In this manner, blockchains are distributed or decentralized because they are hosted and perpetuated by numerous "nodes" spread across computers around the globe, including in the United States. Because the shared ledger is decentralized in this manner, there is no central point of failure where the shared ledger can be corrupted. Also, the blockchain ledger is not controlled or maintained by any single entity, but exists simultaneously on computers all over the world.

32. By way of illustration, when any transaction is effected using the Bitcoin or Ethereum blockchains, the transactions are recorded in tens of thousands of nodes throughout the world. The distribution of Bitcoin and Ethereum nodes may be viewed at the following websites: `https://bitnodes.earn.com/` and `https://www.ethernodes.org/network/1`. The United States hosts a large number of the active nodes worldwide.

33. A blockchain records all transactions in the network in theoretically unchangeable, digitally recorded data packages called "blocks." Each block contains a batch of records of

---

[1] *Investor Bulletin: Initial Coin Offerings*, U.S. SECURITIES AND EXCHANGE COMMISSION (July 25, 2017), `https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings`.

CLASS ACTION COMPLAINT AND JURY DEMAND - 5
No. 2:19-CV-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

transactions, including a timestamp and a reference to the previous block, linking the blocks together in a chain – hence the term "blockchain." For a transaction to be valid on the blockchain, all network participants must first reach a "distributed consensus" on the validity of transactions under review. Blockchains reach consensus by using the same cryptographic algorithm to verify each transaction submitted to the blockchain. For cryptocurrencies secured by a widely distributed blockchain network, any attempt to submit a false or malicious transaction would be extremely difficult, if not impossible, since a malicious actor must gain control of a majority of the nodes on the blockchain to achieve a malicious purpose. Once a transaction is validated on the blockchain, the transaction cannot be canceled, reversed, or altered in any way. Because the blockchain records and secures information for all transactions, a participant can see every transaction involving the currency all the way back to genesis.

34. Blockchain technologies and distributed ledgers may create and disseminate virtual "tokens" or "coins." A token or coin may entitle its holders to certain rights related to an underlying venture, such as rights to profits, shares of assets, rights to use certain services provided by the issuer, and/or voting rights. The tokens or coins may also be traded on online exchanges, in exchange for virtual or fiat currencies. As the SEC has stated, based on these rights, "in certain cases, the tokens or coins will be securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration."[2]

**B.    The Creation of Atonomi**

35. CENTRI Technologies states that it "provides a complete, advanced security solution for the Internet of Things."[3]

36. On December 4, 2017, CENTRI formed Atonomi, as a wholly owned subsidiary of CENTRI and a Delaware LLC.

---

[2] *Id.*

[3] *See* https://www.centritechnology.com/company-about-centri/ (last accessed February 14, 2019).

Class Action Complaint and Jury Demand - 6
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

37. On December 5, 2017, Atonomi issued a press release identifying itself as "the blockchain-based arm of leading IoT security provider CENTRI Technology."[4]

38. In that press release, Atonomi further "announced the launch of the Atonomi Network, a crypto-security protocol that will enable advanced trust and identity validation for IoT devices for the first time."[5]

39. On March 15, 2018, Atonomi registered to do business in this State, and identified CENTRI Technology as its registered agent for service of process.

**C.   The Atonomi ICO**

40. Almost immediately after its formation, and even before registering to do business in Washington, Atonomi began raising funds through the sale of unregistered securities.

41. Atonomi sold securities through an written instrument called a "Simple Agreement for Future Tokens," or "SAFT." An exemplary SAFT between Atonomi and Plaintiff McGrath is attached hereto as Exhibit A.

42. The SAFT is a contract between Atonomi and each investor whereby the investor transferred a digital currency with a specified value in U.S dollars to Atonomi.

43. Atonomi in exchange promised to transfer Atonomi blockchain tokens to the investor in the future.

44. The SAFT is an investment contract.

45. The SAFT is the offer and sale of a security instrument, as it states on the first page, first line.

46. The SAFT "certifies that in exchange for the payment by [name] (the "Purchaser") of [an amount of Ethereum coins] (the "Purchase Amount") on or about [date], Atonomi, LLC, a duly formed Delaware limited liability company in good standing (the

---

[4] *See* https://atonomi.io/news/centri-technology-launches-atonomi-network-to-bring-security-and-trust-to-internet-of-things (last accessed February 14, 2019).

[5] *Id.*

Class Action Complaint and Jury Demand - 7
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

"Company"), hereby issues to the Purchaser the right to purchase certain units of the Atonomi Token (the "Token(s)"), subject to the terms and conditions set forth below." Exhibit A at 2.

47. In each SAFT, "[t]he Company and Purchaser agree the Purchase Amount has a value of US$ [specified amount] for purposes of Section 3." Exhibit A at 2.

48. Atonomi conducted the ICO for the purpose of raising investment capital.

49. As stated in the SAFT, "'<u>SAFT</u>' means an instrument containing a future right to Tokens, similar in form and content to this instrument, ***sold by the Company for the purpose of generating future revenue***." Exhibit A at 4 (emphasis added).

50. Atonomi stated that it would use the investment capital to develop blockchain technology.

51. As stated in the SAFT, "The Purchaser understands that the design and structure of the Token, the Atonomi Protocol, and the allocation and distribution of Tokens remain under development and may materially change from their current descriptions in the Company's whitepaper and other materials." Exhibit A at 7.

52. After Atonomi's employees developed the technology, it would issue tokens to investors, who could then resell the tokens at a profit to those interested in actually implementing the future Atonomi technology.

53. However, as the SAFT warned, "The Purchaser understands there is no guarantee that the distribution of the Tokens will occur at any particular time or at all." Exhibit A at 7.

54. Further demonstrating that the SAFT and ICO represented the sale of securities, the parties to the SAFT agreed "to treat this instrument as a forward contract for U.S. federal, state and local income tax purposes . . ."

55. A forward contract is a type of security instrument.

56. Between January and June, 2018, Atonomi entered into numerous SAFTs with investors and obtained direct transfers of Ethereum from these investors.

Class Action Complaint and Jury Demand - 8
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

57. Upon information and belief, on June 6, 2018, Atonomi also undertook a "public sale" wherein it took in investments from retail investors that did not sign any SAFT.

58. On June 6, 2018, Defendants announced on Atonomi's website that "the sale is now closed." The announcement stated further:

> We sold approximately 133m tokens to our pre-cleared purchasers and received 14,000 ETH in this public sale. We had 14,300 customers buy our tokens and we are so very appreciative of your belief in the power of securing the IoT with the Atonomi Network. To check if your transaction was successful, you can confirm by searching your transaction ID on EtherScan. There you can look for the "Success" status indicator. Also, to see how many ATMI tokens you purchased, look at the circled field.[6]

59. Upon information and belief, Defendants raised at least $25,000,000 in the Atonomi ICO.

**D. Each Defendant Has Joint And Several Liability For The Atonomi ICO**

60. Defendant Atonomi sold the securities in the ICO.

61. Defendant CENTRI, as the parent company and sole owner of Atonomi, directly controlled Atonomi and its sale of the securities.

62. In messages sent to an investor in the Atonomi ICO on or about February 14, 2019 Defendant Fragale, who left Atonomi in August, 2018, stated that, "[CENTRI] did [the Atonomi ICO] to raise money for centri, They've used it to try and find a buyer for centri. But no one will buy it." *See* Exhibit B. According to Fragale, "CENTRI sees [the Atonomi ICO] as a product sale so it's revenue and they can use it however they want." *Id*. Fragale further stated that, "centri took the ICO funds and used it to pay its bills." *Id*.

63. In messages posted to a public chatroom on or about February 15, 2019, a former employee of Atonomi named Grant Fjermedal stated that "[t]he venture capital firm that had been funding CENTRI for some years was eager to get something back from their investment. They had

---

[6] *See* https://atonomi.io/news/sale-closed (last accessed February 18, 2019).

Class Action Complaint and Jury Demand - 9
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

continued funding CENTRI as Atonomi was created. … things soon shifted to CENTRI soon after the ICO, which is exactly when the new CEO was brought in."

64. CENTRI and Atonomi are closely linked beyond merely a corporate parent-child relationship.

65. CENTRI acknowledged as recently as March 2019 that its leadership and Atonomi's leadership jointly hosted meetings and sponsored events at Mobile World Congress 2019 in Barcelona. *See* Exhibit C.

66. Defendant Emery is a founder of Atonomi. *See* Exhibit D.

67. Defendant Emery, as the CEO of Atonomi, was an officer of Atonomi during the time Atonomi sold the securities.

68. Defendant Emery is also a founder of CENTRI. *See* Exhibit E.

69. Defendant Robert Strickland was a director of Atonomi during the time Atonomi sold the securities. See Exhibit F.

70. Defendant Strickland has also since been appointed CEO of both Atonomi and CENTRI. See Exhibit F.

71. Defendant CENTRI refers to Atonomi not as a separate company but as "the blockchain-based product business unit of CENTRI." See Exhibit G.

72. Defendant CENTRI also refers to Atonomi as one of its products. See Exhibit H.

73. Defendant Deloach is President and COO of CENTRI. See Exhibit G.

74. Defendant Mackey, as the Chief Technology Officer of Atonomi, was an officer of Atonomi during the time Atonomi sold the securities. See Exhibit I.

75. Defendant Mackey is also the Chief Technology Officer of CENTRI. See Exhibit I.

76. Defendant Fragale, as the Chief Product Officer of Atonomi and co-founder of Atonomi, was an officer of Atonomi during the time Atonomi sold the securities.

77. Defendant Paris, as the Chief Data Scientist of Atonomi, was an officer of Atonomi during the time Atonomi sold the securities. See Exhibit E.

CLASS ACTION COMPLAINT AND JURY DEMAND - 10
NO. 2:19-CV-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

78. Defendant Paris is also a founder of CENTRI. *See* Exhibit E.

79. Defendant Wisehart was a director of Atonomi during the time Atonomi sold the securities. See Exhibit J.

80. Defendant Wisehart was also a director of CENTRI during the time Atonomi sold the securities. See Exhibit J.

81. Defendant Benson was a director of Atonomi during the time Atonomi sold the securities.

82. Defendant Kyle Strickland, as the "community manager" for Atonomi, materially aided each transaction in the securities through his acts in conducting and/ or directing all company communications with investors and prospective investors about the ICO.

83. Defendant Salter, through his role as the head of marketing for Atonomi, materially aided in the sale of the securities through, *e.g.*, participating in online Q&As in which he touted the security.

84. During the ICO, Defendant Salter was also the head of marketing for CENTRI. See Exhibit E.

E.  **The Atonomi ICO Was A Securities Offering; The Atonomi Token Is A Security**

85. On March 20, 2018, Atonomi filed a Form D, "Notice of Exempt Offering of Securities" with the United States Securities Exchange Commission.

86. In filing the Form D, Atonomi acknowledge that it was selling a security.

87. Atonomi told all investors that its ICO was a securities offering.

88. The SAFT states that "THE OFFER AND SALE OF THIS SECURITY INSTRUMENT HAS NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THIS SECURITY MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES

Class Action Complaint and Jury Demand - 11
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM." Exhibit A at 1 (emphasis in original).

89. The SAFT is an investment contract: "an investment of money in a common enterprise with profits to come solely from the efforts of others."

90. Entering into the SAFT and transferring Ethereum tokens to Atonomi constituted an investment of money.

91. Each SAFT identified the number of Ethereum tokens used for the purchase of Atonomi tokens.

92. Each SAFT characterized the number of Ethereum tokens as a "Purchase Amount."

93. Each SAFT gave a value in U.S. dollars attributable to the Ethereum tokens.

94. Atonomi thereby sold securities which it called tokens.

95. Investors who entered into SAFTs with Atonomi invested in a common enterprise with a reasonable expectation of profits.

96. Atonomi informed investors that the reason for the ICO was to raise funds for Atonomi to use to develop blockchain technology and issue future tokens, from which investors would profit.

97. The SAFT described the SAFT's terms as "an instrument containing a future right to Tokens . . . sold by the Company for the purpose of generating future revenue." Exhibit A at 4.

98. Investors in the Atonomi ICO expected to profit from the managerial and technical efforts of Atonomi and its employees.

99. Investors in the Atonomi ICO did not expect to have to work themselves to develop the blockchain technology for Atonomi to succeed and return a profit to investors.

Class Action Complaint and Jury Demand - 12
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

100. Indeed, as a part of its ICO, Atonomi published a "product roadmap" stretching from 2018 to 2019, describing the product it would build using ICO funds, which is still available on its website.[7]

101. The SAFT included the definition that "'<u>Atonomi Protocol</u>' means the Atonomi protocol and infrastructure *under development by Company* that is designed to enable, through specified uses of the Token, security for Internet-of-Things devices." Exhibit A at 3 (emphasis added).

102. On information and belief, Atonomi launched a "beta" network shortly before the June 6, 2018 public token sale.

103. On information and belief, the beta network had few or no users for its stated purpose of securing IoT devices.

104. On information and belief, the Atonomi tokens, when sold, performed no practical function other than as an investment.

105. Approximately one month after the completion of the ICO, instead of developing any blockchain protocol of its own, Atonomi launched an Ethereum-based token on July 12, 2018, distributed these tokens to the over 14,000 investors in its ICO, and "unlocked" the tokens for trading immediately.[8]

106. The Atonomi tokens were issued and exist solely on the Ethereum cryptocurrency network.

107. As of the date of this complaint, the Atonomi tokens have developed no substantive utility other than as a vehicle for investment.

108. These Atonomi tokens were securities, and were not registered nor subject to any exemption from regulation.

---

[7] *See* https://atonomi.io/solution (last accessed February 18, 2019).

[8] *See* https://atonomi.io/news/atonomi-tokens-update (last accessed February 18, 2019).

Class Action Complaint and Jury Demand - 13

No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

109. On August 6, 2018, Atonomi published a "Community FAQ" on its website. In response to a question about "New Exchanges," that is, trading venues for the Atonomi token. Defendants stated:

> We are actively engaged in dialogue with top exchanges. We are not in a position to comment on which exchanges will be listing the ATMI token before that happens but we expect the current list to expand.[9]

110. On September 23, 2018, Defendant Emery spoke with an investor in a private online chat on the Telegram chat platform. In response to a question about what exchanges Atonomi will be listed on, Defendant Emery stated that, "I am in regular contact with the team at Bittrex[10] that does the onboarding. We seem to be through their diligence and pending listing. I have asked for a timeline, but they do not provide any listing details. There are a number of tier #2 exchanges we are looking into as well."

111. In messages sent to an investor in the Atonomi ICO on or about February 14, 2019 Defendant Fragale stated, referring to Atonomi, "that is an unregistered security in my book." *See* Exhibit B.

**F.  The Atonomi ICO Was Not Registered**

112. The Atonomi ICO was not registered with the Securities Exchange Commission.

113. The Atonomi ICO was not registered with any federal agency responsible for overseeing securities offerings.

114. In filing a Form D, Atonomi asserted that its sale of securities did not require registration.

115. The Atonomi ICO was not registered with the Washington State Department of Financial Institutions.

---

[9] *See* https://atonomi.io/news/latest-community-faqs (last accessed February 18, 2019).

[10] Bittrex, a Seattle-based cryptocurrency exchange, is one of the largest such exchanges in the country.

Class Action Complaint and Jury Demand - 14
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

116. The Atonomi ICO was not registered with any Washington state agency responsible for overseeing securities offerings.

**G.     The Atonomi ICO Was Not Exempt From Registration**

117. In filing a Form D, Atonomi claimed that its sale was exempt from registration because it would comply with the restrictions in 17 C.F.R. § 203.506(b) ("Rule 506(b)").

118. On information and belief, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO in violation of the restrictions set forth under Rule 506(b).

119. On information and belief, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO to more than 35 unaccredited investors.

120. On information and belief, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO through a general solicitation.

121. On information and belief, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO to unaccredited investors without providing the disclosure documents required by federal law for such sales.

122. On information and belief, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO without implementing the limitations on resale required for exempt securities.

123. Indeed, Atonomi distributed ICO tokens—which are securities—a mere month after the completion of the ICO.

124. Defendants did not comply with Rule 144 and lock up the tokens—which are securities—for 12 months as required.

125. Instead, Defendants unlocked the tokens for trading immediately.

CLASS ACTION COMPLAINT AND JURY DEMAND - 15
NO. 2:19-CV-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

126. Defendants repeatedly assured investors that they were seeking exchanges – liquidity venues – to list Atonomi tokens for public trading.

127. Atonomi tokens have been publicly trading on exchanges as well as in direct investor to investor transactions since July 2018.

128. Defendants have not made any effort to lock up these securities.

129. Since listing, the price of Atonomi tokens have collapsed by over 98% and any market for them has effectively evaporated.

## V. CLASS ALLEGATIONS

130. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class of persons:

> All persons and entities who, directly or indirectly through an intermediary, purchased the Atonomi Initial Coin Offering conducted in spring and summer 2018.

131. Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

132. Plaintiffs reserve the right to amend the Class definition if further investigation and/or discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

133. Upon information and belief, there were approximately 14,300 investors in the Atonomi ICO. The number of individuals and entities who comprise the Class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts. Class members may be identified from records maintained by Defendants, and may be notified of the pendency of this action by mail or electronic mail using the form of notice similar to that customarily used in securities class actions.

134. Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendants' wrongful

CLASS ACTION COMPLAINT AND JURY DEMAND - 16
No. 2:19-CV-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

conduct as complained of herein, in violation of federal law. Plaintiffs are unaware of any interests that conflict with or are antagonistic to the interests of the Class.

135. Plaintiffs will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in securities class actions and complex litigation. Plaintiffs and their counsel will adequately and vigorously litigate this class action, and Lead Plaintiff is aware of his duties and responsibilities to the Class.

136. Defendants have acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions affecting individual Class members. The questions of law and fact common to the Class include, *inter alia*:

   a. Whether the offer of the Atonomi SAFT Atonomi ICO constituted the sale or offer of "securities;"
   b. Whether Defendants were required to file a registration statement for the Atonomi ICO;
   c. Whether Defendants sold, directly or indirectly controlled a seller, were partners, officers, directors, or persons who occupy a similar status as to a seller, or were employees who materially aided in sales of the Atonomi securities offering; and
   d. Whether Plaintiffs and the Class are entitled to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, and the proper calculation and amount of that consideration, interest, costs, and fees.

137. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the injury and/or damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible as a practical matter for Class

Class Action Complaint and Jury Demand - 17
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

138. Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## VI. CAUSE OF ACTION

139. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

140. This sole Count is brought pursuant to the Washington Securities Act, RCW 21.20.430, on behalf of the Class, against all defendants.

141. Defendants sold unregistered securities, directly or indirectly controlled the seller of unregistered securities, were a partner, officer, director or person who occupies a similar status or performs a similar function of such seller of unregistered securities, or were the employee of such a seller of unregistered securities who materially aided in the sale.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

A. Declaring that this action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives and their counsel as Counsel for the Class;

B. Declaring that Defendants offered and sold unregistered securities in violation of the Washington Securities Act;

C. Awarding Plaintiffs and the members of the Class the remedy of recovery of the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, against all Defendants, jointly and severally; and

D. Such other and further relief as this Court may deem just and proper.

Class Action Complaint and Jury Demand - 18
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## VIII. JURY DEMAND

Plaintiff and the Class hereby demand a trial by jury.

April 25, 2019.

ARD LAW GROUP PLLC

By: /s/ Joel B. Ard
Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243
Attorneys for Plaintiffs

AFN LAW PLLC

By: /s/ Angus F. Ni
Angus F. Ni, WSBA # 53828
AFN Law PLLC
506 2nd Ave, Suite 1400
Seattle, WA 98104
Phone: (646) 543-7294
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT AND JURY DEMAND - 19
No. 2:19-cv-00615

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243