1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

6

7   CHRIS HUNICHEN, individually and on
behalf of all others similarly situated,

No. 2:19-cv-00615-RAJ-MAT

8                    Plaintiff,

FIRST AMENDED CLASS ACTION
COMPLAINT

9        v.

10  Atonomi LLC, a Delaware LLC, CENTRI
Technology, Inc., a Delaware Corporation,
11  Vaughan Emery, David Fragale, Rob
Strickland, Kyle Strickland, Don Deloach,
12  Wayne Wisehart, Woody Benson, Michael
Mackey, James Salter, and Luis Paris,
13
            Defendants.
14

JURY DEMAND

15
16
17      Plaintiff, individually and on behalf of all others similarly situated, alleges the following

18  based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information

19  and belief as to all other allegations, based on investigation of counsel. This investigation

20  included, *inter alia*, a review of public statements and disclosure materials prepared by

21  Defendants; media reports; interviews; social media; and other information concerning

22  Defendants. The investigation of the facts pertaining to this case is continuing. Plaintiff

23  believes that substantial evidentiary support will exist for the allegations set forth herein after

24  a reasonable opportunity for discovery.

25
26

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# I. INTRODUCTION

1.      This suit seeks the return of approximately $20-25,000,000 worth of funds, together with statutory interest and attorneys' fees, which Defendants procured from investors through the sale of unregistered securities in violation of the Washington Securities Act, Chapter 21.20 RCW (hereafter the "WSA" or the "Act").

2.      The Act forbids the sale of unregistered securities, and allows purchasers of unregistered securities to assert joint and several liability against anyone whose acts were substantial contributing factors in the sales transaction.

3.      The Act requires sellers and controllers to return the purchase price of unregistered securities plus statutory 8% interest from the date of sale, together with reasonable attorneys' fees.

4.      In spring 2018, Atonomi LLC ("Atonomi"), a wholly owned subsidiary of CENTRI Technologies, Inc. ("CENTRI"), raised approximately $25 million through the sale of unregistered securities in through a six-month long "Initial Coin Offering," or "ICO."

5.      Atonomi as seller, and the remaining defendants, as persons who substantially contributed to the Atonomi ICO, thereby violated the WSA through their sale of unregistered securities which they sold in the ICO.

6.      The securities sold in the ICO were neither registered as required under the Act, nor subject to any exemption from registration.

7.      The ICO resulted in the sale of approximately $25,000,000 in unregistered securities, and therefore every defendant is jointly and severally liable that amount in refunded sales proceeds, together with 8% interest dating from the spring 2018 sale, and attorneys' fees.

# II. JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs and at least one member of the putative class of plaintiffs is a citizen of a State different from any defendant.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

9.      This Court has personal jurisdiction over Atonomi and CENTRI because both corporate entities reside in this state by virtue of each maintaining its principal place of business in this state.

10.     This Court has personal jurisdiction over certain among the individual defendants because they reside in this state.

11.     This Court has personal jurisdiction over all individual defendants because, as described in greater detail below, each individual defendant purposely availed himself of the privilege of conducting activities within this state, thus invoking the benefits and protection of the laws of Washington.

12.     This Court has personal jurisdiction over all individual defendants because, as described in greater detail below, each individual defendant committed activities in violation of the Act in this state and judicial district and/or directed at residents of this state, and thereby caused harm within this state and to residents of this state.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because both corporate defendants Atonomi and CENTRI reside in this state and judicial district by virtue of each maintaining its principal place of business in this state and judicial district.

### III.  PARTIES

14.     Plaintiff Chris Hunichen invested $191,250 in the Atonomi ICO on February 22, 2018.

15.     Defendant Atonomi is a Delaware Limited Liability Company with a principal place of business in Seattle, Washington.

16.     Defendant CENTRI is a Delaware corporation with a principal place of business in Seattle, Washington.

17.     Defendant CENTRI is the parent company and sole owner of Atonomi LLC.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

18.     Defendant Vaughan Emery ("Emery") is the founder and former CEO of Atonomi, a Director of Atonomi, and currently is the self-described "evangelist" for Atonomi. Emery is also the founder and former CEO of Defendant CENTRI. Emery is a Washington resident.

19.     Defendant David Fragale was at all relevant times the Chief Product Officer of Atonomi, and is a co-founder of Atonomi.

20.     Defendant Robert Strickland is the current CEO of Atonomi and CENTRI. During the ICO, Robert Strickland was a Director of Atonomi.

21.     Defendant Kyle Strickland is the "community manager" for Atonomi, and in that role directed and continues to direct numerous company communications with investors and prospective investors about the ICO.

22.     Defendant Don Deloach was at all relevant times the President of Atonomi and a Director of Atonomi, as well as President and COO of CENTRI.

23.     Defendant Wayne Wisehart was at all relevant times a Director of both Atonomi and CENTRI. Wisehart is a Washington resident.

24.     Defendant Woody Benson was at all relevant times a Director of Atonomi.

25.     Defendant Michael Mackey was at all relevant times the Chief Technology Officer of both Atonomi and CENTRI. Mackey is a Washington resident.

26.     Defendant James Salter was at all relevant times the Director of Marketing for both Atonomi and CENTRI. Salter is a Washington resident.

27.     Defendant Luis Paris was at all relevant times the Principal R&D Engineer of both Atonomi and CENTRI. Paris is a Washington resident.

## IV.  FACTS

### A.   Blockchains And ICOs

28.     As the SEC has explained, a "blockchain is an electronic distributed ledger or list of entries – much like a stock ledger – that is maintained by various participants in a network of computers. Blockchains use cryptography to process and verify transactions on the ledger,

First Amended Class Action Complaint and Jury Demand - 4
No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   providing comfort to users and potential users of the blockchain that entries are secure."[1] Well-

2   known examples of blockchain technology are the Bitcoin and Ethereum virtual currencies.

3        29.    Atonomi advertised that the project for which it conducted its ICO would use

4   blockchain technology that it intended to develop after its ICO.

5        30.    Blockchains generally record all transactions in the network in theoretically

6   unchangeable, digitally recorded data packages called "blocks." Each block generally contains a

7   batch of records of transactions, including a timestamp and a reference to the previous block,

8   linking the blocks together in a chain – hence the term "blockchain." For a transaction to be

9   valid on the blockchain, all network participants generally first reach a "distributed consensus"

10  on the validity of transactions under review. Blockchains generally reach consensus by using the

11  same cryptographic algorithm to verify each transaction submitted to the blockchain. For

12  cryptocurrencies secured by a widely distributed blockchain network, attempts to submit a false or

13  malicious transaction generally would be extremely difficult, if not impossible, since a malicious

14  actor must gain control of a majority of the nodes on the blockchain to achieve a malicious purpose.

15  Once a transaction is validated on the blockchain, the transaction generally cannot be canceled,

16  reversed, or altered in any way. Because the blockchain records and secures information for all

17  transactions, a participant can see every transaction involving the currency all the way back to

18  genesis.

19       31.    Persons or entities creating blockchain technologies and distributed ledgers often

20  create and disseminate crypto-securities in the form of virtual "tokens" or "coins." A token or

21  coin may entitle its holders to certain rights related to an underlying venture, such as rights to

22  profits, shares of assets, rights to use certain services provided by the issuer, and/or voting rights.

23  The tokens or coins may also be traded on online exchanges, in exchange for virtual or fiat

24  currencies, and through convertibility into other tokens. As the SEC has stated, based on these

25

26    [1] *Investor Bulletin: Initial Coin Offerings*, U.S. SECURITIES AND EXCHANGE COMMISSION (July 25, 2017), https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings.

FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND - 5

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1 rights, "in certain cases, the tokens or coins will be securities and may not be lawfully sold without

2 registration with the SEC or pursuant to an exemption from registration."[2]

3 **B.     The Creation of Atonomi**

4      32.     CENTRI Technologies states that it "provides a complete, advanced security

5 solution for the Internet of Things."[3]

6      33.     On December 4, 2017, CENTRI formed Atonomi, as a wholly owned subsidiary of

7 CENTRI and a Delaware LLC.

8      34.     On December 5, 2017, Atonomi issued a press release identifying itself as "the

9 blockchain-based arm of leading IoT security provider CENTRI Technology."[4]

10      35.     In that press release, Atonomi further "announced the launch of the Atonomi

11 Network, a crypto-security protocol that will enable advanced trust and identity validation for IoT

12 devices for the first time."[5]

13      36.     On March 15, 2018, Atonomi registered to do business in this State, and identified

14 CENTRI Technology as its registered agent for service of process.

15 **C.     The Atonomi ICO**

16      37.     Almost immediately after its formation, and even before registering to do business

17 in Washington, Atonomi began raising funds through the sale of unregistered securities.

18      38.     The Atonomi ICO consisted of two parts.

19      39.     **First**, Atonomi sold securities through a written instrument called a "Simple

20 Agreement for Future Tokens," or "SAFT." An exemplary SAFT between Atonomi and Plaintiff

21 Hunichen is attached hereto as Exhibit A.

22

23   [2] *Id.*

24   [3] *See* https://www.centritechnology.com/company-about-centri/ (last accessed June 20, 2019).

25   [4] *See* https://atonomi.io/news/centri-technology-launches-atonomi-network-to-bring-security-and-trust-to-internet-of-things (last accessed June 20, 2019).

26   [5] *Id.*

First Amended Class Action Complaint and Jury Demand - 6

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

40.     The SAFT is a contract between Atonomi and each investor whereby the investor transferred a digital currency with a specified value in U.S dollars to Atonomi.

41.     Atonomi in exchange promised to transfer Atonomi "coins" or "tokens" to the investor in the future.

42.     The SAFT is the offer and sale of a security instrument, as it states on the first page, first line.

43.     The SAFT "certifies that in exchange for the payment by [name] (the "Purchaser") of [an amount of Ethereum coins] (the "Purchase Amount") on or about [date], Atonomi, LLC, a duly formed Delaware limited liability company in good standing (the "Company"), hereby issues to the Purchaser the right to purchase certain units of the Atonomi Token (the "Token(s)"), subject to the terms and conditions set forth below." Exhibit A at 2.

44.     In each SAFT, "[t]he Company and Purchaser agree the Purchase Amount has a value of US$ [specified amount] for purposes of Section 3." Exhibit A at 2.

45.     Atonomi conducted the ICO for the purpose of raising investment capital.

46.     As stated in the SAFT, "'<u>SAFT</u>' means an instrument containing a future right to Tokens, *similar in form and content to this instrument*, *sold by the Company for the purpose of generating future revenue*." Exhibit A at 4 (emphasis added).

47.     Atonomi stated that it would use the investment capital to develop blockchain technology.

48.     As stated in the SAFT, "The Purchaser understands that the design and structure of the Token, the Atonomi Protocol, and the allocation and distribution of Tokens remain under development and may materially change from their current descriptions in the Company's whitepaper and other materials." Exhibit A at 7.

49.     Further demonstrating that the SAFT represented the sale of securities, the parties to the SAFT agreed "to treat this instrument as a forward contract for U.S. federal, state and local income tax purposes . . ."

First Amended Class Action Complaint and Jury Demand - 7

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

50. A forward contract is a type of security instrument.

51. Between January and June, 2018, Atonomi entered into numerous SAFTs with investors and obtained direct transfers of funds in Ethereum from these investors.

52. Defendants also referred to the SAFT sales as "pre-sales", as in, the pre-cursor sale to the public token sale, described *infra*.

53. **Second**, after the completion of the SAFT-based offering or presale, Atonomi conducted a website-based "Token Sale," during which it sold Atonomi "coins" or "tokens" through its website directly to members of the public that did not sign any SAFT.

54. Section 1(a) of the SAFT conditioned delivery of tokens pursuant to the SAFT upon the occurrence of this "Token Sale." *See* Exhibit A at 2.

55. Upon information and belief, this second phase of Atonomi's ICO occurred on June 6, 2018.

56. On June 6, 2018, Defendants announced on Atonomi's website that "the sale is now closed." The announcement stated further:

> We sold approximately 133m tokens to our pre-cleared purchasers and received 14,000 ETH in this public sale. We had 14,300 customers buy our tokens and we are so very appreciative of your belief in the power of securing the IoT with the Atonomi Network. To check if your transaction was successful, you can confirm by searching your transaction ID on EtherScan. There you can look for the "Success" status indicator. Also, to see how many ATMI tokens you purchased, look at the circled field.[6]

57. Upon information and belief, Atonomi raised over 42,000 Ethereum tokens in the course of its ICO.

58. In light of Atonomi's announcement that it received approximately 14,000 ETH in the public sale, Atonomi raised at least 28,000 ETH in sales to pre-sale investors.

---

[6] *See* https://atonomi.io/news/sale-closed (last accessed June 20, 2019).

First Amended Class Action Complaint and Jury Demand - 8

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

59.     Upon information and belief, Defendants raised at least $25,000,000 in the Atonomi ICO, the vast majority of it from investors who purchased and received Atonomi Tokens by entering into SAFT agreements with Defendants.

60.     Following the completion of the ICO, Atonomi tokens were delivered to all investors in July 2018.

**D.     The Atonomi SAFT Was A Security; The Tokens Sold To Investors Through the SAFT Offering Were Securities**

61.     On March 20, 2018, Atonomi filed a Form D, "Notice of Exempt Offering of Securities" with the United States Securities Exchange Commission.

62.     In filing the Form D, Atonomi acknowledge that it was selling a security.

63.     Atonomi told all investors that its ICO was a securities offering.

64.     The SAFT states that "THE OFFER AND SALE OF THIS SECURITY INSTRUMENT HAS NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THIS SECURITY MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM." Exhibit A at 1 (emphasis in original).

65.     In addition to being a forward contract, the SAFT is an "investment contract," the catch-all definition of a security. Pursuant to the test promulgated in *SEC v. W. J. Howey Co.*, an investment contract is "an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946).

66.     In numerous online chat messages with investors, Defendants described their transfers of funds pursuant to the SAFT, made in exchange for future "tokens," as "investments."

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

67. Entering into the SAFT and transferring Ethereum tokens to Atonomi constituted an investment of money.

68. Each SAFT identified the number of Ethereum tokens used for the purchase of Atonomi tokens.

69. Each SAFT characterized the number of Ethereum tokens as a "Purchase Amount."

70. Each SAFT gave a value in U.S. dollars attributable to the Ethereum tokens.

71. Investors who entered into SAFTs with Atonomi invested in a common enterprise with a reasonable expectation of profits.

72. Atonomi informed investors that the reason for the ICO was to raise funds for Atonomi to use to develop blockchain technology and issue future tokens, from which investors would profit.

73. The SAFT described the SAFT's terms as "an instrument containing a future right to Tokens . . . sold by the Company for the purpose of generating future revenue." Exhibit A at 4.

74. Investors in the Atonomi SAFT offering received the right to future tokens, and ultimately received such tokens.

75. These investors expected to profit from the managerial and technical efforts of Atonomi, CENTRI, and its employees.

76. Investors did not expect to have to work themselves to develop the blockchain technology for Atonomi to succeed and return a profit to investors.

77. Indeed, as a part of its ICO, Atonomi published a "product roadmap" stretching from 2018 to 2019, describing the product it would build using ICO funds, which is still available on its website.[7]

---

[7] *See* https://atonomi.io/solution (last accessed June 20, 2019).

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

78.    The SAFT included the definition that "'Atonomi Protocol' means the Atonomi protocol and infrastructure ***under development by Company*** that is designed to enable, through specified uses of the Token, security for Internet-of-Things devices." Exhibit A at 3 (emphasis added).

79.    On information and belief, Atonomi launched a "beta" network shortly before the June 6, 2018 public token sale.

80.    On information and belief, the beta network had few or no users for its stated purpose of securing IoT devices.

81.    On information and belief, the Atonomi tokens, when delivered to SAFT investors, performed no practical function other than as an investment.

82.    Approximately one month after the completion of the Atonomi public sale, instead of developing any blockchain protocol of its own, Atonomi launched an Ethereum-based token on July 12, 2018, distributed these tokens to those that purchased tokens in the SAFT offering, and "unlocked" the tokens for trading immediately.[8]

83.    On that date, Atonomi acknowledged that the tokens had no substantive utility, when it stated that a person could begin to activate an account by emailing Atonomi. Upon receipt of that email, Atonomi would respond: "After we receive your information above confirming your intention to register devices we will email your individual credentials and a link to access the registration portal, ***which will be available soon***. The portal will feature instructions on how to go through the process."[9] (Emphasis added.)

84.    The Atonomi tokens were issued and exist solely on the Ethereum cryptocurrency network.

---

[8] *See* https://atonomi.io/news/atonomi-tokens-update (last accessed June 20, 2019).

[9] *Id.*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

85.     As of the date of this complaint, the Atonomi tokens have developed no substantive utility other than as a vehicle for investment.

86.     These Atonomi tokens were securities, and were not registered nor subject to any exemption from regulation.

87.     While Atonomi acknowledged that no holder of an Atonomi token could, on the day those tokens were released, make use of it on the Atonomi network, it immediately took steps to encourage trading in the tokens.

88.     In private messages with investors, Defendant Vaughn Emery acknowledged that when Defendants distributed Atonomi tokens to investors, a cryptocurrency exchange called "IDEX" had become the "first exchange to list ATMI" for trading.

89.     Defendant Emery further acknowledged in private messages with investors that Defendants were "watching the trading activity" closely.

90.     As investors dumped their holdings of Atonomi tokens on July 12, 2018, the day the tokens were distributed, Defendant Emery acknowledged in private messages that it was "hard to believe sellers would take a loss on the first day. … I am long term on the value of the solution."

91.     In order to raise the price of Atonomi tokens and increase liquidity, Defendants sought out more venues to enable trade. On August 6, 2018, Atonomi published a "Community FAQ" on its website. In response to a question about "New Exchanges," that is, trading venues for the Atonomi token. Defendants stated:

> We are actively engaged in dialogue with top exchanges. We are not in a position to comment on which exchanges will be listing the ATMI token before that happens but we expect the current list to expand.[10]

92.     On September 23, 2018, Defendant Emery spoke with an investor in an online investor chat on the Telegram platform. In response to a question about what other exchanges Atonomi will be listed on, Defendant Emery stated that, "I am in regular contact with the team at

---

[10] *See* https://atonomi.io/news/latest-community-faqs (last accessed June 20, 2019).

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  Bittrex[11] that does the onboarding. We seem to be through their diligence and pending listing. I

2  have asked for a timeline, but they do not provide any listing details. There are a number of tier #2

3  exchanges we are looking into as well."

4      93.     In messages sent to an investor in the Atonomi ICO on or about February 14, 2019

5  Defendant Fragale stated, referring to Atonomi, "that is an unregistered security in my book." *See*

6  Exhibit B.

7  **E.    Neither The Atonomi SAFT Or Atonomi Token Was Registered**

8      94.     The Atonomi ICO was not registered with the Securities Exchange Commission.

9      95.     The Atonomi ICO was not registered with any federal agency responsible for

10  overseeing securities offerings.

11     96.     In filing a Form D, Atonomi asserted that its sale of securities did not require

12  registration.

13     97.     The Atonomi ICO was not registered with the Washington State Department of

14  Financial Institutions.

15     98.     The Atonomi ICO was not registered with any Washington state agency responsible

16  for overseeing securities offerings.

17  **F.    The Atonomi SAFT Was Not Exempt From Registration**

18     99.     In filing a Form D, Atonomi claimed that its sale was exempt from registration

19  because it would comply with the restrictions in 17 C.F.R. § 203.506(b) ("Rule 506(b)").

20     100.    On information and belief, Atonomi and all defendants knowingly offered and sold,

21  or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO in

22  violation of the restrictions set forth under Rule 506(b).

23     101.    Specifically, Atonomi violated Rule 506(b) in three ways.

24

25

26
___

[11] Bittrex, a Seattle-based cryptocurrency exchange, is one of the largest such exchanges in the country.

First Amended Class Action Complaint and Jury Demand - 13

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

102.   **First**, Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO to more than 35 unaccredited investors, who were not sophisticated.

103.   **Second**, Defendants failed to ensure that the SAFT, and the tokens sold pursuant to the safe, were sold as a "restricted security," that is, a security that could not be transferred within 12 months of the sale.

104.   **Third,** Atonomi and all defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO through a general solicitation and furthermore, used general advertising to solicit investors and conduct the sale.

### 1.   Defendants Sold Securities To Unaccredited Investors

105.   For example, during 2018, as public interest in ICOs grew, ICO projects like Atonomi began to demand ever higher investments from SAFT buyers in order to participate in SAFT-based "pre-sales." In response, numerous groups of unsophisticated retail investors began to pool their funds in order to invest into SAFT offerings. These groups were commonly known as "pools" or "syndicates."

106.   In a pool or syndicate, one lead investor would engage in discussions with an ICO, sign the SAFT in that investor's own name, and transmit funds to the ICO.

107.   In Atonomi's case, Defendants knew or were willfully blind to the fact that they were selling the SAFT offering, and by extension, Atonomi tokens, to unsophisticated investors who were members of such "pools" and "syndicates."

108.   In a February 6, 2018 online conversation between Defendant Emery and a SAFT investor who was a member of an investment pool, Defendant Emery engaged in the following exchange with the investor:

> Emery: "fyi, there are *three syndicates* that we have allocated more than 1M ETH, the balance is spread among many."

> Investor: "we are also a group," "so tokens will be good distributed."

First Amended Class Action Complaint and Jury Demand - 14

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Emery: "yes, ***your group is one of the three*** … we are pushing for as broad a dist[ribution] as possible …"

(emphasis added)

109.    This and other syndicates that transacted with Defendants included unaccredited investors, a fact that Defendants were aware of, or willfully ignored.

110.    In this and other instances, precisely in order to avoid having to conduct investor suitability analysis on every "pre-sale" investor, Defendants knowingly entered into a single SAFT with one investor in the syndicate in order to sell the SAFT offering and Atonomi Tokens to the remaining, potentially unaccredited members of the syndicate.

111.    Indeed, discussing how to support the price of Atonomi tokens during the pre-sale phase in early 2018, Defendant Emery stated in private messages that, "I am in touch with each of the larger syndicate groups to better understand their unique needs and a solution they [sic] works for all," and that "ideally ***the leaders*** of each syndicate ***agree on how they will hold and sell*** once listed. I would prefer not to have a firm lockup policy." This statement shows Defendant Emery's knowledge that "the leaders" of syndicates may help control how syndicate members trade their Atonomi tokens.

112.    While "three syndicates" were allocated the right to invest "1M ETH" into Atonomi, multiple other pools and syndicates received other allocations and invested into the Atonomi SAFT offering with Defendants' knowledge.

113.    By way of illustration, Defendants engaged multiple third party service providers to solicit and communicate with investors in chat channels open to the public. One such solicitation and communications service provider Atonomi engaged was known as "AmaZix", which acted as Defendants' agent during the ICO process. On one such channel hosted on the chat service Telegram, which was popular with ICO investors, "pooling" was common knowledge and broadly acknowledged by AmaZix.

First Amended Class Action Complaint and Jury Demand - 15

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

114.   For example, on January 21, 2018, a conversation took place on Atonomi's public Telegram channel where an AmaZix moderator in the employ of Atonomi acknowledged and encouraged the support of a "pool." Furthermore, on June 8, 2018, during a conversation on Atonomi's public Telegram channel, two AmaZix moderators in the employ of Atonomi acknowledges that while the cap for individual public sale investors was "1 ETH," there was "no" cap "if you did pooling."

115.   Upon information and belief, Defendants' attorneys required SAFT counterparties to fill out an "Investor Suitability Questionnaire" in order to track the accreditation status of presale investors.

116.   In certain instances when transacting with pools, Defendants required every member of the pool to fill out the investor questionnaire. However, in other instances, Defendants knowingly allowed accredited pool representatives to fill out the questionnaire in return for pre-sale "allocations," or allowed sums of money to invest. Defendants did so in the full knowledge that such pool representatives would be transferring the Atonomi tokens they received to other members of the pool, who were often unaccredited.

117.   Despite this knowledge, Defendants did not attempt to ascertain the accreditation status or sophistication of the remaining investors in the pools they transacted with, exclude unaccredited investors in the pools, or to otherwise ensure that there were no more than 35 unaccredited investors who were unsophisticated investing in the Atonomi ICO, as required by Rule 506(b).

118.   For example, in at least one instance where Defendants were knowingly transacting with a pool, Defendant Emery engaged in communications with multiple members of the pool, and was informed by members of the pool that one individual member of the pool would be completing Defendants' "documents," which included the suitability questionnaire, in order for the pool to invest. Defendant Emery acknowledged this work-around to the accreditation process, and told the representative of the pool that there were a few "groups" that failed to clear accreditation, but

First Amended Class Action Complaint and Jury Demand - 16

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

that this group of investors (most of whom were unaccredited), having cleared the process through its lone accredited representative, was "good to go!"

119.    Defendant Emery, despite knowing that there were other individuals in the pool investing through the investor who filled out the Questionnaire, did not require the remaining investors to similarly participate in the accreditation process.

120.    Where unaccredited investors are included in a Rule 506(b) Offering, the issuer is required to provided disclosure documents such as financial statements to such unaccredited investors. On information and belief, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Atonomi ICO to unaccredited investors without providing the disclosure documents required by Rule 506(b).

**2.      Defendants Did Not Lock Up The Restricted Securities They Sold In The SAFT-based Presale Offering**

121.    In an offering that complies with Rule 506(b), investors receive "restricted securities" and the issuer is required to inform investors that such securities would be subject to transfer restrictions and could not be resold unless certain conditions are met. As illustrated in Paragraphs 105-120 *supra*, Defendants willfully sold securities to investors who they knew were purchasing SAFT Offerings for the express purpose of transferring interests in the SAFT securities to other investors who were members of pools immediately.

122.    Indeed, Defendants encouraged such transfers. As Defendant Emery acknowledged, Atonomi, by engaging in transactions with pools, was "pushing for as broad a dist[ribution] as possible …" ¶ 108. As such, Defendants violated the transfer restrictions under Rule 144 and Rule 506(b) when they sold restricted SAFT securities.

**3.      Defendants Relied On General Solicitation and General Advertising**

123.    Atonomi used public channels to solicit and encourage the attention of investors in its offering. These public solicitations included numerous statements communicating with and soliciting "pools" and other public investors in Atonomi's public Telegram channel.

First Amended Class Action Complaint and Jury Demand - 17
No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

124. For example, as of the date of this filing, the Atonomi public Telegram channel contained over 11,000 individuals.

125. Atonomi used public communication channels prior to execution of the SAFTs to solicit, advertise to, and initiate communications with investors with whom Defendants did not have any prior relationship.

126. For example, on January 9, 2019, Defendant Emery advertised the "Atonomi Project" in Atonomi's Telegram channel. After his message touting Atonomi, an investor stated "I wanna join in pre sale!!" In response, an AmaZix moderator in the employ of Atonomi immediately responded "Please pm me. Thank you for your interest!!"[12] Another investor immediately responded " I want to join pre sale … how come I cant pm haha." The same AmaZix moderator immediately responded, "I will pm you." Likewise, on January 21, 2018 conversation with investor, in which investor inquired about the pre-sale and an AmaZix moderator in Atonomi's employ immediately stated that he had "PMed" the investor.

127. Defendants and other Atonomi agents regularly and repeatedly communicated with and solicitated public investors in connection with the offer and sale of Atomoni SAFT securities. Indeed, such communications were among the primary methods through which Atonomi solicited SAFT investors and obtained their investments.

128. Atonomi used multiple other forms of general solicitation and public advertising to solicit investments in the Atonomi ICO.

129. For example, Atonomi released a public website that touted its future prospects. The website was not behind a firewall or any otherwise restricted public view. Anyone with an internet connection could view the website for the Atonomi ICO and review offering documents.

130. Atonomi also conducted numerous public presentations and "pitches" in which it attempted to solicit investors and generate interest in the Atonomi ICO. These presentations were

---

[12] "PM" means "private message," or a direct person-to-person communication instead of a publicly broadcast message.

First Amended Class Action Complaint and Jury Demand - 18
No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

not limited in any way to sophisticated investors and were broadly open to members of the public. On information and belief, Defendants discussed the terms of the Atonomi ICO, and solicited indications of interest to invest in the ICO, with these members of the public.

131.    For example, on January 5, 2018, Defendant Fragale made the following statement in the public Atonomi Telegram chat channel:

> Great to see early involvement here from supporters. … Vaughan and I will be in Vegas *pitching* Atonomi at CoinAgenda event. Also, I'll be in NYC on panel w Hyundai and IOTA at Blockmatics event the 10th. …

(emphasis added)

132.    On January 13, 2018, Defendant Fragale posted two photos of his presentation in Boston in the public Telegram chat channel with the caption: "Co-Founder David Fragale presenting Atonomi to +150 in Boston Blockchain Crypto Event" and stating "Mob scene after panel. Took 2 hours to talk to everyone about Atonomi afterward!" Defendant Fragale then informed investors in the chat that "We'll be in SF for WCEF and BTC Miami this week. Will be at London Blockchain Week Jan 21-25. Hope to see and meet folks there!"

133.    On April 17, 2018, as Atonomi was still in the process of completing its SAFT sales, Defendant Emery and a former employee Grant Fjermedal appeared in a public "Ask Me Anything" or "AMA" session that was live-broadcast on Twitter.[13] During the nearly hour-long live broadcast, Fjermedal read questions being transmitted live by investors about the terms of the ICO, and Emery answered those questions. Emery also touted Atonomi's technology and prospects. Approximately 2800 viewers watched the live broadcast.

134.    In addition to these efforts, Atonomi also used a Twitter account to post numerous advertisements during the time it was soliciting SAFT investors. Amongst other things, between January and February 2018, Atonomi's Twitter account advertised a "mailing list," encouraged viewers to "join[] the conversation in [Atonomi's public] Telegram," where Defendants were

---

[13] *See* https://twitter.com/search?lang=en&q=AMA%20(from%3Aatonomi)%20since%3A2018-04-16%20until%3A2018-04-18&src=typed_query (last accessed June 20, 2019).

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  actively soliciting investors and discussing the terms of the ICO, and publicized video recordings

2  of Defendants public presentations concerning the Atonomi ICO.[14]

3     135.   Atonomi used multiple other public avenues to generally solicit and advertise to

4  investors. These included, for example, the popular ICO forum "bitcointalk.org," where ICO

5  investors congregated and where numerous ICOs announced themselves during the 2017-2018

6  cryptocurrency bubble.[15]

7  **G.   The Atonomi Token Was Not Exempt From Registration**

8     136.   Section 1(a) of the SAFT itself conditioned delivery of tokens upon the occurrence

9  of a "Token Sale." See Exhibit A at 2.

10     137.   Section 1(a) of the SAFT stated:

11  In connection with the purchase of Tokens pursuant to this Section 1(a), the
Purchaser will execute and deliver to the Company all transaction documents related

12  to the Token Sale (the "Token Sale Documents")

13  *See* Exhibit A at 2.

14     138.   Upon information and belief, on or about June 5, 2018, Defendant Emery sent an e-

15  mail to SAFT signatories containing a link to a "final terms of sale," displayed on a sub-page of

16  Atonomi's website.

17     139.   The June 5, 2018 email was not sent to all SAFT investors, because, as Emery and

18  Atonomi knew, many SAFT investors were members of pools and did not individually sign SAFTs.

19     140.   The e-mail stated that "I am very pleased to let you know the Atonomi public token

20  sale will begin tomorrow at 5pm UCT."

21     141.   Nothing in the e-mail required, or even asked, that its recipients click the link or

22  assent to the "terms" contained on the linked web page.

23

24

---

25  [14] *See* https://twitter.com/search?q=(from%3Aatonomi)%20since%3A2018-01-05%20until%3A2018-02-18&src=typed_query (last accessed June 20, 2019).

26  [15] *See* https://bitcointalk.org/index.php?topic=3099916.0 (last accessed June 20, 2019).

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

142.    Nothing in the e-mail made viewing the web-page or assenting to the terms contained within it a pre-condition to receiving tokens.

143.     Indeed, despite the fact that the SAFT stated that "the Purchaser will execute and deliver to the Company all transaction documents related to the Token Sale," no SAFT investor was ever required to execute or otherwise assent to the purported "final terms of sale" e-mailed on June 5, 2018.

144.    All SAFT investors ultimately received their tokens without ever being required to execute, nor display any signs of assent to any document, terms, or agreements other than the SAFT.

145.    No assent nor any display of assent to any terms beyond the SAFT was ever made a precondition to SAFT investors' receiving their tokens.

146.    Indeed, upon information and belief, the "final terms of sale" displayed on a sub-page of Atonomi's website were not even in existence at the time the SAFT offering was being marketed and sold to Plaintiff and members of the Class.

147.    SAFT investors received Atonomi tokens, without engaging in any further agreements with the company beyond the SAFT.

148.    As such, the Atonomi tokens were sold to the SAFT investors solely pursuant to the SAFT.

149.    SAFT investors purchased the right to Atonomi tokens. As such, because Defendants failed to comply with Rule 506(b) in conducting the Atonomi SAFT-based pre-sale, the tokens delivered pursuant to the SAFT are also not exempt from registration for the same reasons the SAFT was not exempt, as set forth above.

150.    However, the Atonomi tokens also independently failed to comply with any exemptions from registration because Defendants made no attempts whatsoever to prevent them from being freely traded as required for restricted securities. Indeed, as allege above, Defendants actively encouraged free-trading and sought out exchange venues for Atonomi tokens.

151. On or about July 18, 2018, Atonomi and all defendants knowingly delivered Atonomi's Ethereum-based tokens to SAFT investors, without implementing the limitations on resale required for exempt securities.

152. Indeed, Atonomi distributed the Atonomi tokens, which are securities independent from the SAFT, a mere month after the completion of the ICO.

153. Defendants did not comply with Rule 144 and lock up the tokens for 12 months as required.

154. Instead, Defendants unlocked the tokens for trading immediately upon their release.

155. Defendants repeatedly assured investors that they were seeking exchanges (liquidity venues) to list Atonomi tokens for public trading, even before the tokens were delivered to investors.

156. Atonomi tokens have been publicly trading on exchanges as well as in direct investor to investor transactions since July 2018.

157. Defendants have not made any effort to lock up these securities.

158. Since listing, the price of Atonomi tokens have collapsed by over 99% and any market for them has effectively evaporated. The Atonomi tokens are currently worthless.

**H.     Each Defendant Has Joint And Several Liability For The Atonomi ICO**

159. Defendant Atonomi sold the securities in the ICO.

160. Defendant CENTRI, as the parent company and sole owner of Atonomi, directly controlled Atonomi and its sale of the securities.

161. In messages sent to an investor in the Atonomi ICO on or about February 14, 2019, Defendant Fragale, who left Atonomi in August, 2018, stated that, "[CENTRI] did [the Atonomi ICO] to raise money for centri, They've used it to try and find a buyer for centri. But no one will buy it." *See* Exhibit B. According to Fragale, "CENTRI sees [the Atonomi ICO] as a product sale

1    so it's revenue and they can use it however they want." *Id.* Fragale further stated that, "centri took

2    the ICO funds and used it to pay its bills." *Id.*

3        162.      In messages posted to a public chatroom on or about February 15, 2019, former

4    Atonomi employee Grant Fjermedal – who appeared with Defendant Emery on the above-

5    referenced April 17, 2018 live-broadcasted AMA – stated that "[t]he venture capital firm that had

6    been funding CENTRI for some years was eager to get something back from their investment.

7    They had continued funding CENTRI as Atonomi was created. … things soon shifted to CENTRI

8    soon after the ICO, which is exactly when the new CEO was brought in."

9        163.      CENTRI and Atonomi are closely linked beyond merely a corporate parent-child

10   relationship.

11        164.      CENTRI acknowledged as recently as March 2019 that its officers and directors

12   and Atonomi's officers and directors jointly hosted meetings and sponsored events at Mobile

13   World Congress 2019 in Barcelona, Spain. *See* Exhibit C.

14        165.      Defendant Emery is a founder of Atonomi. *See* Exhibit D.

15        166.      Defendant Emery, as the CEO of Atonomi, was an officer of Atonomi during the

16   advertising and promotion of the ICO, and during Atonomi's sale the securities.

17        167.      Defendant Emery is also a founder of CENTRI. *See* Exhibit E.

18        168.      Defendant Robert Strickland was a director of Atonomi during the advertising and

19   promotion of the ICO, and during Atonomi's sale of the securities. *See* Exhibit F.

20        169.      Defendant Strickland has also since been appointed CEO of both Atonomi and

21   CENTRI. See Exhibit F.

22        170.      Defendant CENTRI refers to Atonomi not as a separate company but as "the

23   blockchain-based product business unit of CENTRI." *See* Exhibit G.

24        171.      Defendant CENTRI also refers to Atonomi as one of its products. *See* Exhibit H.

25        172.      Defendant Deloach is President and COO of CENTRI. *See* Exhibit G.

26

First Amended Class Action Complaint and Jury Demand - 23

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

173.    Defendant Mackey, as the Chief Technology Officer of Atonomi, was an officer of Atonomi during the advertising and promotion of the ICO, and during Atonomi's sale of the securities. *See* Exhibit I.

174.    Defendant Mackey is also the Chief Technology Officer of CENTRI.

175.    Defendant Fragale, as the Chief Product Officer of Atonomi and co-founder of Atonomi, was an officer of Atonomi during the advertising and promotion of the ICO, and during Atonomi's sale of the securities.

176.    Defendant Paris, as the Chief Data Scientist of Atonomi, was an officer of Atonomi during the advertising and promotion of the ICO, and during Atonomi's sale of the securities. *See* Exhibit E.

177.    Defendant Paris is also a founder of CENTRI. *See* Exhibit E.

178.    Defendant Wisehart was a director of Atonomi during the advertising and promotion of the ICO, and during Atonomi's sale of the securities. *See* Exhibit J.

179.    Defendant Wisehart was also a director of CENTRI during the advertising and promotion of the ICO, and during Atonomi's sale of the securities. *See* Exhibit J.

180.    Defendant Benson was a director of Atonomi during the advertising and promotion of the ICO, and during Atonomi's sale of the securities.

181.    Defendant Kyle Strickland, as the "community manager" for Atonomi, materially aided each transaction in the securities through his acts in conducting and/ or directing all company communications with investors and prospective investors about the ICO.

182.    Defendant Salter, through his role as the head of marketing for Atonomi, materially aided in the sale of the securities through, *e.g.*, participating in online Q&As in which he touted the security.

183.    During the ICO, Defendant Salter was also the head of marketing for CENTRI. See Exhibit E.

First Amended Class Action Complaint and Jury Demand - 24
No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## V.  CLASS ALLEGATIONS

184.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(2) and or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class of persons:

> All persons and entities who, directly or indirectly through an intermediary, participated in the Atonomi ICO.

185.    Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

186.    Also excluded from the Class are any investors who affirmatively assented to the "final terms of sale" by executing or otherwise affirmatively demonstrating agreement to such terms.

187.    Plaintiffs reserve the right to amend the Class definition if further investigation and/or discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

188.    Upon information and belief, there were numerous investors in the Atonomi ICO. The number of individuals and entities who comprise the Class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts. Class members may be identified from records maintained by Defendants, and may be notified of the pendency of this action by mail or electronic mail using the form of notice similar to that customarily used in securities class actions.

189.    Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendants' wrongful conduct as complained of herein, in violation of federal law. Plaintiffs are unaware of any interests that conflict with or are antagonistic to the interests of the Class.

190.    Plaintiffs will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in securities class actions and complex litigation.

Plaintiffs and their counsel will adequately and vigorously litigate this class action, and Lead Plaintiff is aware of his duties and responsibilities to the Class.

191.   Defendants have acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions affecting individual Class members. The questions of law and fact common to the Class include, *inter alia*:

    a.   Whether the offer of the Atonomi SAFT constituted the sale or offer of "securities;"

    b.   Whether Defendants complied with Rule 506(b) of SEC Regulation D's safe harbor;

    c.   Whether Defendants were required to file a registration statement for the Atonomi ICO;

    d.   Whether Defendants sold, directly or indirectly controlled a seller, were partners, officers, directors, or persons who occupy a similar status as to a seller, or were employees who materially aided in sales of the Atonomi securities offering; and

    e.   The proper remedies available to Plaintiffs and the Class.

192.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the injury and/or damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible as a practical matter for Class members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

193.   Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## VI.  CAUSE OF ACTION

194.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

195.   This sole Count is brought pursuant to the Washington Securities Act, RCW 21.20.430, on behalf of the Class, against all defendants.

196.   Defendants sold unregistered securities, directly or indirectly controlled the seller of unregistered securities, were a partner, officer, director or person who occupies a similar status or performs a similar function of such seller of unregistered securities, or were the employee of such a seller of unregistered securities who materially aided in the sale.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

A.   Declaring that this action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives and their counsel as Counsel for the Class;

B.   Declaring that Defendants offered and sold unregistered securities in violation of the Washington Securities Act;

C.   Awarding Plaintiffs and the members of the Class the remedy of recovery of the consideration paid for the security, together with interest at eight percent per annum from the date of payment against all Defendants, jointly and severally;

D.   Imposing a constructive trust on all monies wrongfully retained by Defendants;

E.   Awarding costs of litigation, including expert witness costs, and reasonable attorneys' fees, against all Defendants, jointly and severally; and

F.   Such other and further relief as this Court may deem just and proper.

## VIII.  JURY DEMAND

Plaintiff and the Class hereby demand a trial by jury.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

June 20, 2019.

ARD LAW GROUP PLLC

By:_____
Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243


AFN LAW PLLC

By:_____
Angus F. Ni, WSBA # 53828
AFN Law PLLC
506 2nd Ave, Suite 1400
Seattle, WA 98104
Phone: (646) 543-7294

ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS

FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND - 28
No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1

**CERTIFICATE OF SERVICE**

2

I certify under penalty of perjury under the laws of the United States of America that

3

on June 20, 2019, I filed the foregoing via the Court's ECF system which will automatically

4

serve all parties.

5

6

7

ARD LAW GROUP PLLC

8

9

By: _____

10

11

Joel B. Ard, WSBA # 40104
ARD LAW GROUP PLLC

12

P.O. Box 11633

13

Bainbridge Island, WA 98110
206.701.9243

14

Joel@Ard.law
ATTORNEYS FOR PLAINTIFFS AND

15

THE PUTATIVE CLASS

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

No. 2:19-cv-00615-RAJ-MAT

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243