1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

CHRIS HUNICHEN, individually and on
behalf of all others similarly situated,

8

                        Plaintiff,

CASE NO. C19-0615-RAJ-SKV

9

              v.

10

ATONOMI LLC, et al.,

11

                        Defendants.

REPORT AND RECOMMENDATION

12

13

ATONOMI LLC,

14

                        Counterclaimant/Third-
                        Party Plaintiff,

15

              v.

16

CHRIS HUNICHEN,

17

                        Counter-Defendant,

18

              &

19

DAVID PATRICK PETERS, et al.

20

                        Third-Party Defendants.

21

22

<u>INTRODUCTION</u>

23

Plaintiff/Counter-Defendant Chris Hunichen and Third-Party Defendants David Patrick

REPORT & RECOMMENDATION
PAGE - 1

1   Peters, Sean Getzwiller, David Cutler, Chance Kornuth, and Dennis Samuel Blieden

2   (collectively "Counter-Defendants") filed a Motion for Judgment on the Pleadings.  Dkt. 171.

3   Defendant/Counterclaimant Atonomi LLC (Atonomi) opposes the motion, Dkt. 179, and the

4   parties request oral argument.  The Court, having considered the motion, opposition, and

5   remainder of the record, finds oral argument unnecessary and Counter-Defendants entitled to a

6   judgment on the pleadings and dismissal of the claims at issue.

7                                   BACKGROUND

8            Plaintiff initiated this matter, individually and on behalf of all others similarly situated,

9   alleging violation of the Washington State Securities Act (WSSA), RCW 21.20.010 et seq.,

10  through the sale of unregistered, non-exempt securities.  Dkt. 15.  The Court's prior descriptions

11  of facts underlying the lawsuit, *see* Dkts. 40 & 86, will not be repeated herein.  It is enough to

12  state that the claims relate to Atonomi's sale of virtual or digital "ATMI tokens" through a pre-

13  sale in which Counter-Defendants and others signed a Simple Agreement for Future Tokens

14  (SAFT), followed by a public sale of tokens.

15           Atonomi responded to the First Amended Complaint with an Answer, Counterclaims, and

16  Third Party Complaint alleging breach of contract, fraud, and civil conspiracy, and seeking

17  contribution for any damages found.  Dkts. 81 & 82.  Counter-Defendants moved to dismiss

18  under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).   Dkt. 96.  The Court denied the

19  motion without prejudice to re-filing, Dkts. 126 & 156, Plaintiff filed a Second Amended

20  Complaint, Dkt. 137, and Counter-Defendants filed the motion addressed herein, Dkt. 171.

21                                   DISCUSSION

22           A party may move for judgment on the pleadings after the pleadings are closed, but early

23  enough not to delay trial.  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when,

REPORT & RECOMMENDATION
PAGE - 2

taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006).

The Court reviews a Rule 12(c) motion under the same standard as a motion under Rule 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Rule 12(b)(6) provides for dismissal based on the absence of either a cognizable legal theory or sufficient facts to support a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Court construes the pleading in the light most favorable to the pleading party and must accept as true all factual allegations and all reasonable inferences to be drawn from the material allegations. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The pleading must allege facts to state a claim for relief plausible on its face, a requirement met with pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Court may not, as a general matter, consider materials outside the pleadings in ruling on a motion under Rule 12(b)(6) or Rule 12(c) without treating the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Exceptions to this rule include material properly submitted as a part of the pleading, the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).[1]

_____

[1] Under Rule 201, the Court may take judicial notice of an adjudicative fact "not subject to reasonable dispute" because it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This allows for consideration of "'matters of public record'" but not "disputed facts contained in such public records." *Khoja*, 899 F.3d at 1002 (quoting *Lee*, 250 F.3d at 689-90). A document is incorporated by reference where the claim depends on the contents of a document, the moving party attaches the document to its motion, and the parties do not dispute the authenticity of the document, even though its contents are not explicitly alleged in the pleading. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). This doctrine

Counter-Defendants here move for judgment on the pleadings on the third party and counterclaims for breach of contract, fraud, civil conspiracy, and contribution. The Court, for the reasons set forth below, finds Counter-Defendants entitled to the relief requested.[2]

A.    Breach of Contract

Each Counter-Defendant entered into a SAFT with Atonomi in early 2018 and received ATMI tokens on or about July 2, 2018. Dkt. 81 at 21-23, ¶¶14-20, 27; Dkt. 82, ¶¶13-19, 27. Atonomi alleges Counter-Defendants breached the SAFT by transferring tokens beginning July 12, 2018, shortly after they were "'unlocked'", resulting in a higher supply than demand, quickly diminished trading value, and other "dumping" of tokens. Dkt. 81 at 23, ¶28; Dkt. 82, ¶¶27-37. Specifically, Atonomi alleges a breach of SAFT section 6(l), in which each Counter-Defendant agreed to

> at all times maintain control of [his] wallet where any Tokens are stored, and [he] will not share or disclose the account credentials associated with such wallet with any other party. If [he] transfers Tokens into another wallet or [vault], [he] will likewise at all times maintain control of such other wallet or vault with any other party.

Dkt. 81 at 22-23, ¶22 and at 25, ¶40; Dkt. 82, ¶¶22, 45.

1.    Applicable Law:

The Court must first determine the law applicable to this claim. Counter-Defendants maintain Delaware law governs the SAFT under its choice-of-law provision. Dkt. 137-1 at ¶

---

"prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja*, 899 F.3d at 1002.

[2] Atonomi asks that the Court deny the motion due to a failure to meet and confer prior to filing, pointing to the Chambers Procedures of assigned District Court Judge Richard A. Jones. *See* https://www.wawd.uscourts.gov/sites/wawd/files/JonesGeneralMotionsPractice.pdf. Because no such requirement for dispositive motions has been applied in this matter during the referral for resolution of all preliminary matters pursuant to Local Rule MJR 6 and General Order 02-19, this request should be denied.

8(h).  Atonomi does not specify the applicable law and cites to both Washington and Delaware case law.  Dkt. 179 at 5-9.

Given the Court's exercise of diversity jurisdiction in this case, Washington's choice of law rules determine the controlling substantive law.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  "Washington courts generally enforce choice-of-law provisions."  *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1228 (W.D. Wash. 2014) (citing *Schnall v. AT & T Wireless Services, Inc.*, 171 Wn. 2d 260, 259 P.3d 129, 131-32 (2011)).  *See also McKee v. AT & T Corp.*, 164 Wn. 2d 372, 384, 191 P.3d 845 (2008) (en banc) (courts enforce choice of law provisions unless: (1) absent the provision, Washington law would apply, (2) the "chosen state's law violates a fundamental public policy of Washington," and (3) Washington's interest in the issue outweighs the other state's interest).  Courts ordinarily "will not engage in a conflicts analysis unless the party asserting the law of a foreign jurisdiction first shows that the law of that jurisdiction is fundamentally incompatible."  *DC3 Entm't, LLC v. John Galt Entm't, Inc.*, 412 F. Supp. 2d 1125, 1138 (W.D. Wash. 2006) (citing *Burnside v. Simpson Paper Co.*, 123 Wn. 2d 93, 864 P.2d 937, 941 (1994)).

In this case, the SAFT contains a choice-of-law provision identifying Delaware as the controlling law and there are no allegations of incompatibility.  The Court thus finds Delaware law applicable to the breach of contract claim.

2.    <u>Breach of Contract Claim</u>:

In seeking dismissal, Counter-Defendants argue the SAFT and Atonomi's pleadings preclude a breach of contract claim pursuant to SAFT section 1(d):

> This instrument will expire and terminate (without relieving the Company of any obligations arising from a prior breach of or non-

1
2

> compliance with this instrument) upon either (i) the delivery of
> Tokens to the Purchaser pursuant to Section 1(a); or (ii) the
> payment, or setting aside for payment, of amounts due the
> Purchaser pursuant to Section 1(b).

3

4   Dkt. 137-1 at § 1(d).[3]  That is, pursuant to section 1(d), there could be no breach of contract

5   following their receipt of tokens and the resulting termination of the SAFT.

6          For a breach of contract claim, a pleading party must allege (1) a valid contract, (2) a

7   breach of a duty arising under that contract, and (3) resulting damage.  *VLIW Tech., LLC v.*

8   *Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  In interpreting intent, a court first looks

9   to the text of the contract.  *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d

10  836, 846 (Del. 2019) (citation omitted).  When clear and unambiguous, a court gives "'effect to

11  the plain-meaning of the contract's terms and provisions,' without resort to extrinsic evidence."

12  *Id.* (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010)).  "'Delaware

13  adheres to the "objective" theory of contracts, i.e. a contract's construction should be that which

14  would be understood by an objective, reasonable third party.'"  *Id.* (citations omitted).  A court

15  gives priority to the intentions of the parties "'as reflected in the four corners of the agreement,'

16  construing the agreement as a whole and giving effect to all its provisions."  *Salamone v.*

17  *Gorman*, 106 A.3d 354, 368 (Del. 2014) (quoting *GMG Capital Inv., LLC. v. Athenium Venture*

18  *Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).  "'Contract terms themselves will be controlling

19  when they establish the parties' common meaning so that a reasonable person in the position of

20  either party would have no expectations inconsistent with the contract language.'"  *Id.*  (quoting

21  *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

22

23

---

[3] The parties do not dispute that the entire SAFT, which is attached to the Second Amended Complaint, is properly considered herein.

REPORT & RECOMMENDATION
PAGE - 6

Contractual ambiguity exists "'[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings.'"  *GMG Capital Inv., LLC*, 36 A.3d at 780 (quoting *Eagle Indus., Inc.*, 702 A.2d at 1232).  If ambiguous, a court must look beyond the contract language and consider extrinsic evidence to determine intent.  *Id*. *Accord Sunline Com. Carriers, Inc.*, 206 A.3d at 847.

Counter-Defendants assert the absence of a valid contract or breach because, by its express terms, the SAFT expired and terminated upon delivery of the tokens.  *See Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 932-33 (Del. 2017), as revised (June 28, 2017) ("'[W]here the contract expressly provides that the representations and warranties terminate upon closing . . . the parties have made clear their intent that they can provide no basis for a post-closing suit seeking a remedy for an alleged misrepresentation. That is, when the representations and warranties terminate, so does any right to sue on them.'") (quoting *GRT, Inc. v. Marathon GTF Technology, Ltd*., 2011 WL 2682898, at *13 (Del. Ch. July 11, 2011)).  They point to the inclusion of post-termination obligations only for Atonomi as reflecting the exclusion of any continuing obligations of their own.  *See Active Asset Recovery, Inc. v. Real Est. Asset Recovery Servs., Inc.*, 1999 WL 743479, at *11 (Del. Ch. Sept. 10, 1999) ("If one subject is specifically named, or if several subjects of a larger class are specifically enumerated, and there are no general words to show that other subjects of that class are included, it may reasonably be inferred that the subjects not specifically named were intended to be excluded.") (citing Arthur L. Corbin, 3 Corbin on Contracts § 552 at 206 (1960)).  They also note that Atonomi maintains the success of its "Atonomi Network" depended on token sales in order to connect devices associated with the tokens.  *See, e.g.*, Dkt. 49 at 7.

Atonomi agrees the success of its network depended on developers getting tokens to

REPORT & RECOMMENDATION
PAGE - 7

connect devices, but asserts the dumping of tokens on the day they were unlocked jeopardized

the realization of the network.  It alleges a material breach of SAFT section 6(l) because, whether

or not the SAFT terminated, the section 6(l) "wallet control" provision survived and Counter-

Defendants breached the contract by transferring tokens to wallets outside of their control.

Atonomi argues this dispute may not be resolved under Rule 12(c) because it focuses on

two clauses within, rather than the four corners of the SAFT, requires inquiry into matters and

extrinsic evidence beyond the pleadings in order to ascertain meaning and intent, and because the

parties' competing interpretations present material factual disputes.  It identifies issues yet to be

resolved as whether the SAFT terminated and whether, even though the SAFT terminated, its

clauses still governed the ATMI transactions and conduct of the parties past termination.

In asserting ambiguity in the contract terms, Atonomi points to Counter-Defendants'

responses to Requests for Admissions as showing they all denied the SAFT terminated.  *See* Dkt.

180, Ex. B.  Atonomi also argues Counter-Defendants' reading of the section 1(d) "termination"

provision would improperly render other provisions of the contract inconsistent or meaningless,

and contravene the maxim that specific terms govern or qualify the meaning of inconsistent

general terms.  *See Sunline Com. Carriers, Inc.,* 206 A.3d at 846 ("The contract must also be

read as a whole, giving meaning to each term and avoiding an interpretation that would render

any term 'mere surplusage.'  But general terms of the contract must yield to more specific

terms.") (quoted and cited sources omitted).  That is, the specific wallet control provision

assumes receipt of tokens in requiring purchasers to maintain control of any wallet where they

are stored or transferred, and reading the general termination provision to provide for termination

upon token receipt would render the wallet control provision useless.

"'If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent

REPORT & RECOMMENDATION
PAGE - 8

1    of the parties, to vary the terms of the contract, or to create an ambiguity.'" *Exelon Generation*

2    *Acquisitions*, *LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) (quoted source omitted).

3    "Contractual terms are 'not rendered ambiguous simply because the parties in litigation differ'

4    concerning their meaning, nor because the parties simply 'do not agree upon [their] proper

5    construction.'" *Comet Sys., Inc. Shareholders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del.

6    Ch. 2008) (quoted sources omitted).  Accordingly, Counter-Defendants' responses to Requests

7    for Admissions, like any other post-contract litigation materials, do not and cannot be used to

8    establish contractual ambiguity.

9         The discovery responses would not, in any event, support Atonomi's position.  Counter-

10   Defendants did not deny the SAFT terminated; they denied that, pursuant to section 1(d), "the

11   investment relationship ceased" upon token delivery.  *See* Dkt. 180, Ex. B at response to Request

12   for Admission (RFA) 21 ("Admit once SIGNATORIES received TOKENS depending on their

13   level of investment, the investment relationship ceased, pursuant to the SAFT Section 1(d)

14   Termination"), and, for plaintiff, RFA 10 ("Admit once SIGNATORIES would receive

15   TOKENS depending on their level of investment, the investment relationship would cease.").

16   An existing investment relationship is consistent with Plaintiff's claim Atonomi is liable for the

17   sale of ATMI tokens as unregistered securities sold in violation of the WSSA.  *See* Dkt. 137.

18   Indeed, and as Counter-Defendants observe, Atonomi has countered that claim by arguing the

19   SAFT terminated with token delivery.  *See* Dkt. 49 at 2 ("By June 2018, the investors received

20   their tokens and the investment relationships terminated. . . .  Plaintiff merely received tokens as

21   part of his investment agreement, which itself terminated upon receipt."), 6 ("The investment

22   relationship under the SAFT would terminate as soon as the ATMI Tokens were delivered to the

23   investor.") (citing SAFT at "'(Section 1d).'"), and 7, 9, 18 ("[T]he SAFT ended with the transfer

1   of the ATMI Tokens and Defendants had no further duty to the investors.")[4]

2        Atonomi does not identify and the Court does not find any ambiguity in the text of the

3   termination provision.  The text is clear and unambiguous and would be read by an objective,

4   reasonable third party as reflecting that, except for ongoing obligations on the part of Atonomi,

5   the SAFT terminated with token delivery.

6        Atonomi relies on its reading of the wallet control provision as demonstrating an internal

7   conflict with the termination provision and therefore ambiguity in the contract.  Atonomi does

8   not, however, provide the entire text of the wallet control provision in either its pleadings or

9   opposition brief.  SAFT section 1(d) states:

> The Purchaser will at all times maintain control of the Purchaser's wallet where any Tokens are stored, and the Purchaser will not share or disclose the account credentials associated with such wallet with any other party. If the Purchaser transfers Tokens into another wallet or vault, the Purchaser will likewise at all times maintain control of such other wallet or vault, *and will not share or disclose the account credentials associated with such other wallet or vault* with any other party.

Dkt. 137-1 at § 1(d) (emphasis added).  *Cf.* Dkt. 81 at 22-23, ¶23 and at 25, ¶40 and Dkt. 82, ¶¶22, 45 ("If [he] transfers Tokens into another wallet or [vault], [he] will likewise at all times maintain control of such other wallet or vault with any other party."); *accord* Dkt. 179 at 9. Read in full, while contemplating purchasers' possession of tokens, the wallet control provision does not address the transferring of *tokens* from Counter-Defendants to another party.  It obligates a purchaser to maintain control of any wallet or vault in which the purchaser stores tokens and proscribes a purchaser from sharing the *credentials* associated with any such wallet or

---

[4] Of course, much like Counter-Defendants' discovery responses, such post-contract litigation materials are not considered in determining ambiguity.

REPORT & RECOMMENDATION
PAGE - 10

1    vault with another party.

2         Nor could the wallet control provision be rationally construed as prohibiting the transfer

3    or sale of tokens from the purchaser to another party.  Atonomi suggests, but does not identify

4    any other contractual language restricting or setting parameters for "secondary market token

5    sales" or the dumping of tokens once unlocked.  Dkt. 179 at 10.  Without such language,

6    Atonomi's reading of the wallet control provision would appear to prohibit *any* transfer or sale of

7    tokens.  Yet, Atonomi acknowledges it intended for the transferring of tokens at some point in

8    time.  Even assuming the wallet control provision survives termination of the SAFT, it would not

9    serve as a basis for a breach of contract claim through the sale of tokens.  Atonomi does not

10   identify any other acts or omissions that could be construed as constituting a breach of the wallet

11   control provision, such as the sharing or disclosure of wallet credentials.  It alleges a breach

12   "[b]y virtue of transferring Tokens to wallets" outside of Counter-Defendants' control.  Dkt. 81

13   at 25, ¶40; Dkt. 82, ¶45.

14        The Court, in sum, finds the language of the SAFT not susceptible to the meaning

15   necessary to allow for the breach of contract claim alleged by Atonomi.  There is no conflict

16   between the wallet control and termination provisions or any contractual ambiguity that would

17   allow for a conclusion that a sale of tokens after delivery to Counter-Defendants constituted a

18   breach of the SAFT.  Atonomi's breach of contract claim through the alleged failure to comply

19   with SAFT section 6(l) fails as a matter of law.  Having reached that conclusion, the Court need

20   not herein resolve whether the wallet control provision can be read to survive the termination of

21   the SAFT.

22   B.    Fraud

23        Atonomi alleges fraud in relation to SAFT section 6(b), in which each Counter-

REPORT & RECOMMENDATION
PAGE - 11

Defendant represented he was "'purchasing this instrument for [his] own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and [he] has no present intention of selling, granting any participation in, or otherwise distributing the same.'" Dkt. 81 at 26, ¶47; Dkt. 82, ¶52. Atonomi alleges these representations were false because the Counter-Defendants "had already entered into agreements, whether oral or written or formal or informal," with others "that they would trade, attempt to sell, and/or sell Atonomi tokens contrary to their utilitarian purposes, seek quick monetary returns, and/or for other purposes that would injure Atonomi." Dkt. 81 at 26, ¶45; Dkt. 82, ¶50.

    1.    <u>Applicable Law</u>:

To the extent consideration of this claim requires interpretation of the contract, the Court applies Delaware law for the reasons stated above. Otherwise, given the Court's exercise of diversity jurisdiction, Washington State law governs the fraud and other non-contractual claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1939). Under Washington law, the elements of fraud or intentional misrepresentation include:

> (1) representation of an existing fact; (2) materiality of the representation; (3) falsity of the representation; (4) the speaker's knowledge of the falsity; (5) the speaker's intent that the information be acted upon by the plaintiff; (6) plaintiff's ignorance of the falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) resulting damages.

*BP West Coast Products LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2013) (citing *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996)).

    2.    <u>Fraud Claim</u>:

Counter-Defendants argue the misrepresentations alleged cannot constitute fraud.

1    Specifically, they contend the contractual provision relied upon refers not to tokens, but to the

2    SAFT itself, and that the fraud claim also fails as a matter of law under the independent duty

3    doctrine and the bar against alleging fraud through breach of contract. *See* Dkt. 171 at 5-8; Dkt.

4    181 at 8-11. Atonomi rejects a reading of section 6(b) as referring to the SAFT and maintains

5    the sufficiency of its fraud allegations under the heightened pleading requirement of Federal

6    Rule of Civil Procedure 9(b). It does not respond to Counter-Defendants' other arguments.

7    Atonomi's failure to respond raises a question as to whether it concedes the merit of the asserted

8    legal bars to the fraud allegations. The Court, however, finds no need to address those

9    arguments given the fundamental flaw underlying this claim.

10       SAFT section 6(b) addresses "this instrument", stating that the purchaser "has been

11    advised that this instrument has not been registered under the Securities Act, or any U.S. state

12    securities laws and, therefore cannot be transferred unless registered under the Securities Act" or

13    any applicable laws, or unless an exemption to registration exists. Dkt. 137-1 at § 6(b). The

14    provision barred Counter-Defendants from purchasing "this instrument" for purposes of resale or

15    distribution to another. *Id.*

16       Atonomi's claim rests on an interpretation of section 6(b) as addressing the sale or

17    distribution of ATMI tokens. *See* Dkt. 81 at 26, ¶45; Dkt. 82, ¶50. However, the "instrument" at

18    issue in the provision clearly and unambiguously refers to the SAFT itself. *See* Dkt. 137-1

19    (definition in ¶2: "'<u>SAFT</u>' means an instrument containing a future right to Tokens, similar in

20    form and content to this instrument, sold by the Company for the purpose of generating future

21    revenue."); *see also id.* at ¶8(a) ("This instrument is one of a series of SAFTs[.]")

22       Atonomi depicts this reading of the contract as impossible, but does not support its own

23    interpretation. At most, Atonomi points to an alleged failure to adequately respond to a request

REPORT & RECOMMENDATION
PAGE - 13

1   for admission as supporting its position that section 6(b) governed ATMI-related transactions

2   and that Plaintiff breached that provision. *See* Dkt. 179 at 18-20. However, the discovery

3   response is neither properly considered herein, nor supportive of Atonomi's interpretation. *See*

4   *id*. at 18 (describing insufficiency of response in that Plaintiff merely "admitted that the SAFT

5   contained Paragraphs 6(b).")

6        The contract, in fact, shows Atonomi's interpretation is untenable by repeatedly

7   differentiating between the "instrument" and ATMI tokens. *See*, *e.g.*, Dkt. 137-1 at ¶1(a) ("If a

8   Token Sale occurs before the expiration or termination of this instrument, the Company will

9   deliver to the Purchaser . . . a number of Tokens . . . as defined below."); ¶1(d) ("This instrument

10   will expire and terminate . . . upon . . . the delivery of Tokens."); ¶6(d) ("The Purchaser

11   represents that it has adequate information on which to base its decision to purchase Tokens

12   through this instrument[.]") As Counter-Defendants observe, interpreting section 6(b) to bar

13   token trading would unreasonably require giving a meaning to the word "instrument" not

14   applicable to any other provision in the contract. It would also be unreasonable given that

15   Atonomi admittedly intended for the transferring of ATMI tokens.

16        Considering the above, Atonomi's fraud allegations fail on their face. Atonomi does not

17   allege any misrepresentation regarding the sale or distribution of the SAFT. It does not, as such,

18   identify any affirmative statement misrepresenting an existing fact in relation to SAFT section

19   6(b), as would be required for the claim of fraud set forth in the pleadings. *See Stiley*, 130

20   Wn.2d at 505. Counter-Defendants are entitled to a judgment on the pleadings in relation to this

21   claim.

22   C.    <u>Civil Conspiracy</u>

23        Atonomi alleges civil conspiracy through Counter-Defendants' engagement in a scheme

REPORT & RECOMMENDATION
PAGE - 14

of fraud and breach of contractual duties.  Dkt. 81 at 27, ¶¶55-61; Dkt. 82, ¶¶60-66.  "Under

Washington law, a plaintiff proves a civil conspiracy by showing 'by clear, cogent and

convincing evidence that (1) two or more people contributed to accomplish an unlawful purpose,

or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered

into an agreement to accomplish the object of the conspiracy.'"  *Gossen v. JPMorgan Chase*

*Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011) (quoting *Wilson v. State of Wash.*, 84 Wn.

App. 332, 350-51, 929 P.2d 448, 459 (1996)).  "Because the conspiracy must be combined with

an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the

existence of a cognizable and separate underlying claim."  *Id*. (cited source omitted).  *Accord*

*Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 984 (W.D. Wash. 2020).  In this case,

because Atonomi fails to adequately plead either breach of contract or fraud, there is no

underlying claim on which to maintain a claim of civil conspiracy.  This derivative claim should

be dismissed.

D.    <u>Contribution</u>

Atonomi alleges Counter-Defendants contributed to any loss in value of the ATMI tokens

through their misrepresentations, breaches of contract, fraudulent inducements, and conspiracy.

It seeks contribution in the event it is found liable under the Second Amended Complaint.  Dkt.

81 at 27-28, ¶¶62-64; Dkt. 82, ¶¶67-69.

Counter-Defendants note that joint and several liability is a prerequisite to seek

contribution under Washington's contribution statute.  *Kottler v. State*, 136 Wn.2d 437, 442, 963

P.2d 834 (1998); RCW 4.22.040.  They assert the WSSA only allows for contribution among at-

fault buyers or among at-fault sellers, not between buyers and sellers.  *See* RCW 21.20.430 (1)

(providing for liability of sellers to buyers), (2) (providing for liability of buyers to sellers), and

(3) (providing that anyone who controls, performs a similar function as, or "materially aids" a "seller *or* buyer" under the preceding subsections is "liable jointly and severally with and to the same extent as the seller *or* buyer", and for "contribution as in cases of contract among the several persons so liable.") (emphasis added). Counter-Defendants maintain Atonomi's proposed construction – providing for buyers of unregistered securities to be held jointly and severally liable for the seller's liability – would lead to the absurd result of requiring contribution from every buyer who prevails in a WSSA case, given that, in order for a transaction to take place, every buyer necessarily "materially aids" a seller. *See id.*

Atonomi disagrees with these arguments, but identifies no support for its position other than quoting the WSSA provision addressing at-fault buyers. *See* Dkt. 181 at 11. There is no question the WSSA provides for liability of securities buyers. *See* RCW 4.22.040(2) ("Any person who buys a security in violation of the provisions of RCW 21.20.010 is liable to the person selling the security to him or her, who may sue either at law or in equity to recover the security[.]"), and RCW 21.20.010 ("It is unlawful for any person, in connection with the offer, sale or purchase of any security, . . . (1) To employ any device, scheme, or artifice to defraud; (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.") However, Atonomi does not set forth a plausible claim for fraud or any other claim that would provide a basis for Counter-Defendants' contribution in the event Atonomi is found liable under the WSSA. Counter-Defendants are thus entitled to a judgment on the pleadings in relation to the contribution claim.

/ / /

E.    <u>Leave to Amend</u>

Atonomi alternatively requests leave to amend.  Federal Rule of Civil Procedure 15 directs the Court to "freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15 (a).  Leave to amend should be freely given

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[]

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Atonomi requests leave to amend "if it appears possible for Atonomi to correct the defect." Dkt. 179 at 24.  Counter-Defendants deny any amendment would cure the deficiencies. The Court finds no basis for concluding the defects described herein could be cured by amendment.  Considering that finding of futility and the now more advanced stage of these proceedings, the Court concludes justice would not be served by allowing leave to amend.

CONCLUSION

For the reasons discussed above, the Motion for Judgment on the Pleadings, Dkt. 171, should be GRANTED and the Third Party Complaint, Dkt. 82, and First Amended Counterclaims, Dkt. 81 at 20-28, should be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions

REPORT & RECOMMENDATION
PAGE - 17

calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 16, 2021**.

DATED this 25th day of June, 2021.


S. KATE VAUGHAN
United States Magistrate Judge

REPORT & RECOMMENDATION
PAGE - 18