1

2

3

4

5                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
6                                AT SEATTLE

7    CHRIS HUNICHEN, individually and on
     behalf of all others similarly situated,
8                                                    CASE NO. C19-0615-RAJ-SKV
                           Plaintiff,
9
             v.
10
     ATONOMI LLC, et al.,
11
                           Defendants.               REPORT AND RECOMMENDATION
12

13   ATONOMI LLC,

14                         Counterclaimant/Third-
                           Party Plaintiff,
15           v.

16   CHRIS HUNICHEN,

17                         Counter-Defendant,

18           &

19
     DAVID PATRICK PETERS, et al.
20
                           Third-Party Defendants.
21

22                                 INTRODUCTION

23        Plaintiff Chris Hunichen moves for preliminary approval of a proposed partial settlement

REPORT & RECOMMENDATION
PAGE - 1

(Settlement) of this class action with "Settling Defendants" Launch Capitol LLC (Launch), Steven J. "Woody" Benson, and David Fragale for $6,037,500.  Dkt. 205.  Plaintiff submits that the Settlement is fair, adequate, and reasonable and will provide certainty of recovery for investors while he continues to pursue his claims against "Non-Settling Defendants" Atonomi LLC (Atonomi), CENTRI Technology, Inc. (CENTRI), M37 Ventures, Inc. (M37), Vaughan Emery, Rob Strickland, Don DeLoach, Wayne Wisehart, Michael Mackey, and James Salter. Non-Settling Defendants oppose the motion and request oral argument.  Dkt. 211.  Launch and Mr. Benson respond to the opposition in a joinder to Plaintiff's motion.  Dkt. 216.

The Court, having considered the motion, all papers filed in support and opposition, and the remainder of the record, finds oral argument unnecessary and recommends Plaintiff's Motion for Preliminary Approval of Partial Class-Wide Settlement, Dkt. 205, be GRANTED.

BACKGROUND

A.    Claims and Procedural History

Plaintiff, individually and on behalf of all others similarly situated, pursues a single cause of action alleging violation of the Washington State Securities Act (WSSA), RCW 21.20.010 et seq., through the sale of unregistered, non-exempt securities.  Dkt. 137.  The lawsuit relates to the sale of "ATMI tokens" in exchange for Ethereum (ETH) cryptocurrency in a 2018 "Initial Coin Offering" (ICO).  *Id*.  The ICO raised some $25 million in proceeds, first through a several months-long private sale to eighty investors who entered into a Simple Agreement for Future Tokens (SAFT), followed by a one-day public sale of tokens purchased by some fourteen thousand individuals.  *Id*.  More detailed descriptions of underlying facts may be found in prior Reports and Recommendations, Dkts. 40 & 86, and the contemporaneous Report and Recommendation to grant certification of a class against Non-Settling Defendants.

REPORT & RECOMMENDATION
PAGE - 2

The Court also declines to outline the entire, lengthy procedural history of this case. For purposes of considering the current motion, it should be noted that Plaintiff initiated the action in April 2019, that Launch and M37 were added as Defendants in November 2020, and that discovery has been long ongoing and resulted in the production of a substantial number of documents. *See* Dkts. 1, 137 & 206, ¶¶23, 25 (attesting to some 20,000 documents produced by Defendants and 1,774 documents produced by Plaintiff); Dkt. 215, ¶2 (attesting to Atonomi's production of "at least 2,663 documents sent to, received from, or CC'd to defendant Benson and other Launch personnel.") The Court also notes its contemporaneous Report and Recommendation to certify a class and outstanding Report and Recommendation to dismiss Atonomi's counterclaims against Plaintiff and the Third Party Complaint, *see* Dkt. 218.[1]

B.    Parties to Settlement

Plaintiff signed a SAFT reflecting his payment of 225 ETH, a cryptocurrency amount then valued at $191,250.00, and, due to subsequent transfers and sales, asserts a total minimum dollar loss of $161,514.99. Dkt. 198, ¶¶6-15; Dkt. 199, Ex. 29 at 2. Launch invested in CENTRI and Atonomi and was involved in the ICO. *See, e.g.*, Dkt. 137, ¶¶21, 189, 195-97. Mr. Benson is employed by Launch and served as a Director on Atonomi's board, along with four individual Non-Settling Defendants: Mr. Emery, the founder and former CEO of Atonomi; Mr. Strickland, the current CEO of CENTRI, Atonomi, and M37; Mr. DeLoach, the President of Atonomi and President and CEO of CENTRI; and Mr. Wisehart, the Director of CENTRI and Atonomi. *Id.*, ¶¶21-29. Mr. Fragale is a co-founder of Atonomi and was at all relevant times its Chief Product Officer. *Id.*, ¶24.

---

[1] Because these Reports and Recommendations remain outstanding and the status of the counterclaims/third party claims unsettled, the Court declines to order preliminary approval of the partial settlement or to address Plaintiff's arguments as to its authority to do so. *See* Dkt. 214 at 2-3.

REPORT & RECOMMENDATION
PAGE - 3

C.    <u>Mediation and Settlement</u>

All parties to this case, excluding Third Party Defendants, engaged in a one-day mediation on March 4, 2021 conducted by Lou Peterson of Hillis Clark Martin & Peterson P.S. Dkt. 206, ¶¶11-18.  A settlement was not reached, but discussions continued.  *Id*., ¶19.  Plaintiff subsequently reached settlement terms with Launch and Mr. Benson on March 30, 2021 and with Mr. Fragale on April 23, 2021.  *Id*., ¶¶20-22.

PROPOSED SETTLEMENT AND NOTICE

The proposed Settlement provides for the Settling Defendants to pay $6,037,500 in cash into an escrow account for the benefit of the Settlement Class.  The members of the class include:

> all individuals who either (i) purchased ATMI tokens via a Series 1 or Series 2 Simple Agreement for Future Tokens (SAFT) with Atonomi in 2018; or (ii) purchased ATMI tokens through a "public sale" by Atonomi on or about June 6, 2018, except persons that properly exclude themselves from the Settlement, any person, firm, trust, corporation or other entity affiliated with Defendants, or any judge, justice, judicial officer or judicial staff of the Court.

Dkt. 205 at 1; Dkt. 206, Ex. A (Settlement Agreement).

The amount of the Settlement is intended to pay notice and administration costs, taxes and tax expenses, any fee and expense award to proposed class counsel, a service award to Plaintiff at the Court's discretion, and the net settlement fund to be distributed to class members who submit a timely and valid proof of claim.  Dkt. 206, Ex. A, ¶¶24, 26-27.  The net settlement fund is to be paid out *pro rata* based on the U.S. dollar value of consideration paid by class members for ATMI tokens on the date of investment, minus the value of any consideration received from a sale of the tokens on the date any selling consideration was received.  *Id*., Ex. A., § I.W. (allocation formula to be in accordance with RCW 21.20.430(1)).

REPORT & RECOMMENDATION
PAGE - 4

If not exhausted by valid claims, each member of the Settlement Class will receive the same positive multiplier to provide for full exhaustion of the fund. *Id*., Ex. A ¶26. If oversubscribed, the same negative multiplier will be applied to each claim received. *Id*. The proposed administrator will review claims and determine the evidence sufficient to support a valid claim and claim rejections can be contested to cure deficiencies. *Id*., Ex. A ¶¶26, 29-30. Uncashed funds may be re-distributed and, if not cost effective, any remaining balance will be contributed to non-sectarian, non-profit 501(c)(3) organizations, subject to Court approval. *Id*., Ex. A, ¶26.

The Settlement also contains a contribution claims bar. It provides that, when the parties present the Settlement for final approval, the proposed judgment will bar claims against the Settling Defendants for contribution or indemnity arising from or related to the allegations in the complaint. *Id.*, Ex. A, ¶57 & Ex. B (proposed Order and Final Judgment), ¶¶14-15. The bar order also reduces any judgment obtained against the Non-Settling Defendants by the greater of the percentage of fault attributed to the Settling Defendants or the Settlement amount. *Id.*

The Settlement provides for direct emailing of notice to all class members, with notice to SAFT Investors by first class mail as backup. *Id.*, Ex. A, ¶36 & Ex. E (summary notice). *See also* Dkt. 206, ¶8 (Atonomi produced the names, e-mails, and addresses of all SAFT investors) and ¶9 (the records from the public sale of tokens do not include names, but do list the e-mails and ETH addresses used to send ETH and receive ATMI tokens and the ETH amount invested). It provides for supplemental notice through publication on social media websites and a press release. *Id*., Ex. A, ¶37; Dkt. 207, ¶5. All means of notice provide links to a Settlement website, which would include a long form notice, documents about the case, an electronic claim form, and contact information for the designated administrator. Dkt. 206, ¶39; Dkt. 207, ¶4. Notice would

be in plain language and, in long form, contain information necessary for class members to learn about the case and Settlement, the binding effect of a class judgment, class counsel's requested fee and expense award and a service award for Plaintiff, how to exclude themselves or object, how to file a claim and the plan of allocation, the date and time of the final approval hearing, and procedures for appearing at their own expense if desired.  Dkt. 206, Ex. A, ¶38, Ex. E & Ex. F (long form notice).

<u>DISCUSSION</u>

Plaintiff seeks preliminary approval of a proposed partial settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).  In addition to preliminary approval of the proposed Settlement, Plaintiff requests preliminary appointment as Representative of the Settlement Class; appointment of his counsel as Settlement Class Counsel; approval of the proposed plan of allocation to class members, the manner and content of notice, and the proof of claim form; appointment of JND Legal Administration as Settlement Administrator; and appointment of Signature Bank as Escrow Agent for the Settlement.  He provides a schedule for setting a final approval hearing date, mailing and publication of notice, and for submission of claims and objections.  Dkt. 205 at 20; Dkt. 205-1.

In opposing the motion, Non-Settling Defendants reiterate arguments offered in opposition to the Motion for Class Certification.  They also object to allowing a settlement with Launch, a well-funded and successful venture capital firm and the alleged driving factor behind the ICO.[2]  In so doing, they now concede CENTRI and Atonomi are "essentially defunct", with

---

[2]  In the Second Amended Complaint, Plaintiff described Launch as the "driving factor", with ultimate authority and control over token sales.  Dkt. 137, ¶189 ("[Launch] was a driving factor behind the ICO, as a means to recouping value from [Launch's] multi-million dollar investment in CENTRI. [Launch] has also been described as having financed the Atonomi ICO."), ¶195 (Launch "had ultimate decision making control and authority over Atonomi and CENTRI, and each of their officers and directors

REPORT & RECOMMENDATION
PAGE - 6

no employees, no current business operations, and effectively no assets, Dkt. 211 at 1-2; *cf.* Dkts. 49-53, 86, 90 & 178, and assert that the individual defendants rely on an "eroding insurance policy with less than $900,000 remaining[.]" Dkt. 211 at 2. They argue the $6 million dollar Settlement does not accurately reflect Settling Defendants' liability, role, or ability to pay and is unreasonable in accounting for only a fraction of the tens of millions of dollars sought by Plaintiff. *See* Dkt. 137, ¶1 (seeking "the return of approximately $20-25,000,000 worth of funds, together with statutory interest and attorneys' fees"); Dkt. 206, ¶16 (stating the parties' views on damages during mediation "ranged from under $6,000,000 to well over $31,000,000" and that Atonomi's discovery responses indicated $23.157 million from SAFT Investors and $7.924 million in the public sale).[3] They maintain the Settlement is unreasonable and prejudicial in improperly barring them from seeking contribution or indemnity from the Settling Defendants.

Non-Settling Defendants also contend circumstances and issues of timing surrounding settlement negotiations raise an inference of collusion or bad faith. They state that, despite an offer to settle with individual Non-Settling Defendants after the mediation, Plaintiff quickly withdrew the offer without explanation and entered into a settlement with Launch and Mr. Benson, and quickly rejected a subsequent offer to settle with other individual Defendants and M37. Dkt. 212, ¶¶4-7.

Launch and Mr. Benson dispute Non-Settling Defendants' characterization of settlement-

through Defendant Benson.") The pleading elsewhere alleges Launch's liability for its acts and actions as an agent acting on behalf of Atonomi. *Id.*, ¶¶196-97 (stating counsel to Atonomi previously asserted Launch "'was Atonomi's agent and was acting on behalf of Atonomi', such that communications between Atonomi's offering counsel, Perkins Coie LLP, and [Launch], are protected by Atonomi's attorney-client privilege with Perkins Coie LLP.")

[3] Counsel for Non-Settling Defendants attests that Plaintiff "earlier" estimated a total liability "in excess of $80 million, and increasing by $15,000 per day." Dkt. 212, ¶3. However, it remains that, in the operative pleading, Plaintiff seeks "the return of approximately $20-25,000,000 worth of funds together with statutory interest and attorneys' fees[.]" Dkt. 137, ¶1.

REPORT & RECOMMENDATION
PAGE - 7

1    related events.  They contend they engaged in separate negotiations with Plaintiff only after Non-

2    Settling Defendants refused to participate in a global settlement and declined to contribute more

3    than remaining insurance proceeds.  Dkt. 217, ¶¶ 3-7.

4    A.    Preliminary Approval Standard

5           Strong judicial policy favors the settlement of class actions.  *Class Plaintiffs v. City of*

6    *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Rule 23(e), the approval of a class action

7    settlement is a two-step process, beginning with the Court's preliminary approval.  *In re*

8    *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004).  "At

9    the preliminary approval stage, a court determines whether a proposed settlement is within the

10   range of possible approval and whether or not notice should be sent to class members."  *True v.*

11   *Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (cleaned up).  Preliminary

12   approval amounts to a finding that the terms of the proposed settlement warrant consideration by

13   members of the class and a full examination at a final hearing.  *Alcala v. Meyer Logistics, Inc.*,

14   C17-7211, 2019 WL 4452961, at *4 (C.D. Cal. June 17, 2019) (citing Manual for Complex

15   Litigation (Fourth) § 13.14 (2004)).

16          Following preliminary approval and notice, the Court reviews the fairness of the

17   settlement at a final fairness hearing and, if appropriate, renders a finding that the settlement is

18   "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  *See also Lane v. Facebook, Inc.*,

19   696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

20   1998).  That assessment entails consideration of:

21          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
            duration of further litigation; (3) the risk of maintaining class action status
22          throughout the trial; (4) the amount offered in settlement; (5) the extent of
            discovery completed and the stage of the proceedings; (6) the experience and
            views of counsel; (7) the presence of a governmental participant; and (8) the
23          reaction of the class members to the proposed settlement.

REPORT & RECOMMENDATION
PAGE - 8

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Also, where parties agree to a settlement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Settlements prior to certification require a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citations omitted). An order approving such a settlement "must show not only that 'it has explored [the *Churchill*] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *Id.* at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). Evidence of collusion may be explicit or more subtle, such as where a class receives no monetary distribution but class counsel is amply awarded, a "clear sailing" agreement providing for payment of fees separate and apart from class funds and enabling excessive fees and costs in exchange for an unfair settlement, and an arrangement for unawarded fees to revert to defendants rather than a class fund. *Id.* (citations omitted).

Where, as here, the settling parties seek only preliminary approval, a full fairness analysis is not possible or necessary prior to the final fairness hearing. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). As a general matter, preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Alcala*, 2019 WL 4452961, at *4 (citations omitted). *Accord In re Tableware*

1  *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

2  B.      Standing to Object

3         As a general matter, a non-settling defendant lacks standing to object to a partial

4  settlement.  *Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir. 1987).  *Accord*

5  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998-99 (9th Cir. 2005).  "This rule advances the

6  policy of encouraging the voluntary settlement of lawsuits."  *Waller*, 828 F.2d at 583.

7  "Particularly, 'non-settling defendants in a multiple defendant litigation context have no standing

8  to object to the fairness or adequacy of the settlement by other defendants.'"  *Agretti v. ANR*

9  *Freight Sys., Inc.*, 982 F.2d 242 (7th Cir. 1992) (quoting 2 Herbert B. Newberg, Newberg on

10  Class Actions § 11.54 (2d ed. 1985)).

11         A non-settling defendant may, however, object "where it can demonstrate that it will

12  sustain some formal legal prejudice as a result of the settlement."  *Waller*, 828 F.2d at 583.

13  Such prejudice exists where a settlement (1) "purports to strip [a non-settling defendant] of a

14  legal claim or cause of action, an action for indemnity or contribution for example[]" or (2)

15  "invalidates the contract rights of one not participating in the settlement."  *In re Cathode Ray*

16  *Tube Antitrust Litig.*, No. 20-15697, 2021 WL 4306895, at *1 (9th Cir. Sept. 22, 2021); *Smith*,

17  421 F.3d at 998; *Waller*, 828 F.2d at 583-84.  A tactical disadvantage does not constitute plain

18  legal prejudice sufficient to create standing.  *Id*.  *See also Smith v. Lenches*, 263 F.3d 972, 976

19  (9th Cir. 2001).

20         There is no dispute that Non-Settling Defendants have standing to object in relation to the

21  contribution claims bar.  *Smith*, 421 F.3d at 1000-01.  *See also Ciuffitelli v. Deloitte & Touche*

22  *LLP*, C16-0580, 2019 WL 1441634, at *6 (D. Or. Mar. 19, 2019) (while non-settling defendants

23  generally lack standing, they could object to the "contribution claims bar" portion of a proposed

REPORT & RECOMMENDATION
PAGE - 10

partial settlement because it affected their rights to indemnification and contribution) (citing

*Waller*, 828 F.2d at 582-83), Report and Recommendation adopted, 2019 WL 2288432 (D. Or.

May 29, 2019).  The Court, as such, considers those objections below.  Because the remaining

objections as to the fairness or adequacy of the proposed settlement do not amount to an

allegation or showing of formal legal prejudice, they are not properly considered by the Court or

addressed herein.

C.      Preliminary Fairness Analysis

        1.      Settlement Process:

        The Court first considers whether the proposed settlement appears to be the product of

serious, informed, and non-collusive negotiations.  Where reached after meaningful discovery,

arm's length negotiation, and conducted by capable, experienced counsel, a proposed class

settlement is presumptively fair.  *See Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671

F. Supp. 819, 822 (D. Mass. 1987) (citing Manual for Complex Litigation (2d) § 30.41); *Ellis v.

Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir.

1981).  *Accord Schneider v. Wilcox Farms, Inc.*, C07-1160-JLR, 2009 WL 10726662, at *2

(W.D. Wash. Jan. 12, 2009).  The involvement of an experienced mediator also supports a

finding of fairness.  *See, e.g.*, *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-

2184, __ F. Supp. 3d __, 2020 WL 1288377, at *10 (N.D. Cal. Mar. 18, 2020).

        All relevant factors are present in this case.  Settlement negotiations were conducted by

experienced class counsel, before an experienced mediator, and followed a lengthy period of

litigation and discovery, allowing for ample exploration and consideration of the respective

strengths and weaknesses of claims and defenses, as well as the benefits of settlement.  *See* Dkt.

206, ¶¶10-26 and Ex. G; Dkt. 199, Exs. 50-52.  The fact that the parties continued to negotiate

REPORT & RECOMMENDATION
PAGE - 11

after the initial failed mediation also reflects the hard-fought, arm's-length, and non-collusive nature of the negotiations. *See Hicks v. Stanley*, C01-10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.")

Nor is there evidence of collusion or bad faith among the negotiating parties. Plaintiff's counsel attests to negotiating only on behalf of the putative class and the refusal to discuss or negotiate the counterclaims or claims against Third Party Defendants. Dkt. 206, ¶13. The Settlement provides for counsel to seek a fee and expense award and for a service award for Plaintiff, but it does not contain a clear sailing provision or indicate any specific amounts for such awards, and leaves the determination of any fees to the Court's discretion. *Id*., Ex. A at ¶¶ 66-67, 71-72. It also entitles Plaintiff only to the same *pro rata* share of recovery as all other members of the class. *See id*. at ¶26.

    2.    Contribution and Indemnification:

The contribution claims bar agreed to by the settling parties states in relevant part:

> As a material condition of the Settlement, the Court hereby permanently bars, enjoins, and restrains all persons and entities (including but not limited to Non-Settling Defendants, their successors or assigns, and any other person or entity later named as a defendant or third-party in the Action) from asserting, commencing, or prosecuting any claim against any of the Settling Defendants for contribution or indemnity, either directly, representatively, derivatively, or in any other capacity, arising out of, based upon, or related to the claim and allegations asserted in the Action  . . . .

*See* Dkt. 206, Ex. A, ¶57 and Ex. B, ¶¶14-15. It further provides:

> Any final verdict or judgment obtained by or on behalf of the Settlement Class against any individual or entity subject to this Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of fault or responsibility attributed to the Settling Defendants for the alleged loss to the Settlement Class; or (b) the Settlement Amount.

*See id.*

Non-Settling Defendants maintain the Settlement is unreasonable and prejudicial because it improperly bars them from seeking contribution or indemnity from Settling Defendants. They contend the Settlement leaves them "on the hook for joint and several liability on a judgment that exceeds their own liability by tens of millions of dollars." Dkt. 211 at 14. The Court, for the reasons set forth below, concludes these objections lack merit.

There is no dispute that contribution claim bars are both permissible and a well accepted practice utilized to provide certainty to settling parties and to encourage settlement. As recognized by the Ninth Circuit:

> "Any single defendant who refuses to settle, for whatever reason, forces all others to trial. Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented."

*Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989) (quoting *In re Nucorp Energy Securities Litig.*, 661 F. Supp. 1403, 1408 (S.D. Cal.1987)). *See also Bank of Am. v. Travelers Indem. Co.*, C07-0322-RSL, 2009 WL 529227, at *1 (W.D. Wash. Mar. 2, 2009) ("In multi-party litigation, bar orders can be an essential component of a partial settlement.")

The Court has "equitable authority to enter an order precluding subsequent claims for contribution and indemnity by non-settling parties, so long as the non-settling parties receive notice and have their rights protected." *Canal Indem. Co. v. Glob. Dev., LLC*, C14-0823-RSM, 2015 WL 347753, at *3 (W.D. Wash. Jan. 26, 2015) (citations omitted). To ensure fairness, the Court "considers whether the proposed settlement is reasonable and the interests of non-settling defendants are protected." *Id.* (also recognizing: "Reasonableness in this context is 'not a high hurdle[,]' and that the court "'must simply ensure that the settlement is not patently collusive or

REPORT & RECOMMENDATION
PAGE - 13

1    inadequate[.]'") (quoted source omitted).[4]

2        As Non-Settling Defendants observe, they may be barred from further rights of

3    contribution from Settling Defendants in a partial settlement under Rule 23 where:  (1)

4    "At trial, the jury is asked not only to determine the total dollar damage amount, but also the

5    percentage of culpability of each of the nonsettling defendants as well as that of the settling

6    defendants[]"; (2) "Nonsettling defendants as a whole will then be required to pay the percentage

7    of the total amount for which they are responsible[]"; and (3) "The nonsettling defendants will be

8    jointly and severally liable for that percentage, and will continue to have rights of contribution

9    against one another."  *Franklin*, 884 F.2d at 1231.

10       Non-Settling Defendants maintain the bar order potentially leaves them on the hook for

11   liability exceeding their actual percentage of liability and does not clearly provide that they will

12   not be held jointly and severally liable for any percentage of fault or responsibility attributed to

13   Settling Defendants.  The bar order, in fact, provides the proportional reduction sought by Non-

14   Settling Defendants.  It specifically provides that any final verdict or judgment obtained by the

15   Settlement Class against any individual or entity subject to the bar order "*shall be reduced* by the

16   *greater of*: (a) an amount that corresponds to the *percentage of fault or responsibility* attributed

17   to the Settling Defendants for the alleged loss to the Settlement Class; *or* (b) the Settlement

---

19   [4] In *Canal Indem. Co.*, the Court, in addressing a motion for a contribution/indemnification bar
20   associated with an insurance coverage action and suit for a declaratory judgment, recognized that the
     Court need not hold a "'reasonableness' hearing" in making this determination and "*may* consider the
     evaluative factors outlined in *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 717, 658 P.2d 1230
21   (1983) [("[t]he releasing person's damages; the merits of the releasing person's liability theory; the merits
     of the released person's defense theory; the released person's relative faults; the risks and expenses of
22   continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the
     extent of the realizing person's investigation and preparation of the case; and the interests of the parties
23   not being released.")], *rev'd on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756
     P.2d 717 (1988)."  2015 WL 347753, at *3 (emphasis added).  The Court herein considers the
     contribution claims bar under Rule 23(e) and related case law.

1  Amount." Dkt. 206, Ex. B, ¶14 (emphasis added); *accord id*., Ex. A, ¶57. This necessarily

2  reduces the Non-Settling Defendants' future liability to, at least, the percentage of fault or

3  responsibility attributed to the Settling Defendants.

4          Non-Settling Defendants also raise several other arguments relating to contribution

5  and/or indemnity. They contend the contribution claims bar is deficient in not requiring the jury

6  to apportion liability amongst the Settling and Non-Settling Defendants and, instead,

7  contemplating that a "'final verdict or judgment' be entered, and then be reduced (presumably by

8  a Court after a second proceeding)." Dkt. 211 at 15. This assertion is both unsupported and

9  contrary to governing law requiring that "the trier of fact shall determine the percentage of the

10 total fault" attributable to every entity involved. RCW 4.22.070. Non-Settling Defendants

11 further assert they are prejudiced by the absence of any assurances in the proposed Settlement as

12 to their right to obtain discovery and make arguments at trial with respect to Settling Defendants'

13 fault. Yet, they do not identify and the Court does not find any basis for concluding they would

14 be inhibited or in any way precluded from pursuing a position that the Settling Defendants bear

15 responsibility for the securities violations alleged.

16         Non-Settling Defendants further contend that, because the proposed judgment credit only

17 relates to "the alleged loss to the Settlement Class," it is ambiguous as to whether they will

18 receive the benefit of the judgment reduction given the difference in the definitions of the

19 proposed Settlement Class (including all persons who purchased ATMI tokens in a SAFT and

20 the public sale) and the proposed litigation class (including all persons who participated in the

21 SAFT and did not affirmatively assent to the Terms of Token Sale).[5] Plaintiff deems this

22

23

____

[5] The Court, in the Report and Recommendation on class certification, found no basis for a contention that any SAFT investor assented to the Terms of Token Sale.

REPORT & RECOMMENDATION
PAGE - 15

objection vague and conclusory and asserts that, regardless of the class certified, Non-Settling Defendants will be entitled to a proportional reduction of damages by percentage of fault attributed. The Court agrees that it is not clear how Non-Settling Defendants would be harmed as a result of the differences in class definitions and the reference to the alleged loss to the Settlement Class. If anything, pursuant to the bar order, they would be entitled to a proportional reduction in relation to a more broadly defined class. Without further explanation as to the harm alleged, the Court finds no basis for a finding of unfairness.[6]

Non-Settling Defendants, finally, argue the bar order unfairly strips them of their indemnity rights against the Settling Defendants. They point to Plaintiff's allegation that Launch was a driving factor behind the ICO and operated through an agency relationship with Atonomi. Dkt. 137, ¶¶21, 189, 192, 196. They do "not know the extent of that relationship[,]" Dkt. 211 at 17, but assert that, if accepted by the Court, Plaintiff's allegations provide a basis for holding Settling Defendants liable to some Non-Settling Defendants for indemnity. *See, e.g., Stevens v. Sec. Pac. Mortg. Corp.*, 53 Wn. App. 507, 518, 768 P.2d 1007 (1989) ("Indemnity requires full reimbursement and transfers liability from the one who has been compelled to pay damages to another who should bear the entire loss.")

Non-Settling Defendants do not identify a specific contractual or other right of indemnity

---

[6] It is not clear whether Non-Settling Defendants specifically object to the fact the bar order calls for a reduction for any final verdict or judgment obtained by or on behalf of the "Settlement Class" instead of the more narrowly defined litigation class. This may be because the larger Settlement Class incorporates all members of the litigation class, which would be consistent with Plaintiff's assertion that the provision is applicable and necessitates a proportional reduction regardless of the class certified. Plaintiff also elsewhere observes that the Court may grant preliminary approval with instructions to modify the proposed bar order prior to final approval or engage in judicial editing with final approval. *See, e.g., Rieckborn v. Velti PLC*, C13-3889, 2015 WL 468329, at *14 (N.D. Cal. Feb. 3, 2015); *In re Atmel Corp. Derivative Litig.*, C06-4592, 2010 WL 9525643, at *8 (N.D. Cal. Mar. 31, 2010). The parties should, if necessary, address in objections to this Report and Recommendation any need for a modification to the proposed bar order to ensure that the provision will be applicable to any verdict or judgment obtained by or on behalf of the litigation class.

REPORT & RECOMMENDATION
PAGE - 16

against Settling Defendants.  While they need not articulate the precise nature of such claims in order to establish standing to object, *Smith* 421 F.3d at 1001, the substance of their objection appears no more than theoretical and thus insufficient to prevent preliminary approval.  *Cf. id*. at 1009 (affirming trial court's decision to approve settlement containing bar order).

Nor does Plaintiff's allegation of an agency relationship suffice to demonstrate a loss of indemnification rights.  It is, as an initial matter, unclear why Non-Settling Defendants would lack clarity as to their own relationship with Settling Defendants.  Plaintiff provides an email from Atonomi's counsel stating that Launch was "Atonomi's agent and was acting on behalf of Atonomi."  Dkt. 215, ¶1.  Plaintiff argues that, if true, Launch could be entitled to indemnification from Atonomi.  *See* Restatement (Second) of Agency § 438 (1958).  Launch and Mr. Benson add that, given Non-Settling Defendants' involvement in the token sales, they have no viable theory of a right to indemnification from any joint tortfeasor.  *See, e.g.*, RCW 4.22.040(3) ("The common law right of indemnity between active and passive tortfeasors is abolished[.]"); *Johnson v. Continental West, Inc.*, 99 Wn.2d 555, 559-60, 663 P.2d 482 (1983) (explaining that, in abolishing the common law right of indemnity between joint tortfeasors, "the intended purpose was to simply substitute the right of contribution for the right of common law indemnity."); *Ambassador Programs, Inc. v. E.I.L., Ltd.*, C05-0343, 2007 WL 505742, at *9 (E.D. Wash. Feb. 13, 2007) (indemnity not available for joint tortfeasors).  The indemnification-related objection also lacks merit.

3.    Obvious Deficiencies or Improper Preferential Treatment:

The $6 million dollar settlement is substantial and provides a certain benefit to members of the Settlement Class.  The Settlement entitles Plaintiff to the same *pro rata* share as other class members and utilizes the same formula for determining the claims of participants in the

private and public portions of the ICO.  The Court finds no obvious deficiencies in the proposed Settlement and no improper grant of preferential treatment to class representatives or to any segment of the class.

4.    Other Fairness Factors:

This case has been pending for two-and-a-half years and the relative strengths and weakness of the parties' claims have been informed by several merit-related motions addressed by the Court during that time period.  *See* Dkts. 40 & 66 (denying Motion to Compel Arbitration and Stay Court Proceedings or, in the Alternative, to Dismiss); Dkt. 178 (denying Motion for Preliminary Injunction); Dkts. 126 & 156 (denying without prejudice Motion to Dismiss counterclaims and third party claims).  *See also* Dkt. 218 (Report and Recommendation to grant Motion for Judgment on the Pleadings and dismiss counterclaims and third party claims).  The parties' knowledge of the case is likewise informed by the substantial number of documents produced through discovery and responses to numerous interrogatories and requests for admissions.  *See* Dkt. 206, ¶¶23-25; Dkt. 215, ¶2,

Consideration of other *Churchill* factors, including the risk, expense, complexity, likely duration of further litigation, and the experience of counsel, provide further support for preliminary approval of the proposed partial Settlement.  *See, e.g.*, Dkts. 86 & 178 (declining to accept Report and Recommendation to Grant Motion for Preliminary Injunction); Dkt. 206, ¶26 (attesting that counsel for Launch and Mr. Benson indicated during settlement negotiations their willingness and ability to litigate the case through appeals); and Dkt. 199, Exs. 50-52 (Curriculum Vitae for Plaintiff's counsel); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ("Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *In re Omnivision Techs.,*

*Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.' In addition to being familiar with the present dispute, Lead Counsel has significant expertise in securities litigation.") (internal citation omitted).

      5.   <u>Range of Possible Approval</u>:

The proposal calls for a Settlement amount of $6,037,500. As only a partial settlement with three out of twelve remaining Defendants, it appears to provide for some twenty percent, excluding interest, of the total amount of losses claimed and damages sought in this matter. *See* Dkt. 137, ¶1 (seeking "$20-25,000,000 worth of funds, together with statutory interest and attorneys' fees"); Dkt. 206, ¶16 (depicting views during mediation as ranging "from under $6,000,000 to well over $31,000,000" and Atonomi as indicating it received $23.157 million from SAFT Investors and $7.924 million in the public sale). Considered as such, Plaintiff attests and the Court agrees that the Settlement falls well within the range of possible approval.

D.   <u>Prerequisites for Certification</u>

Because a class has not yet been certified, the Court also considers whether the proposed Settlement Class could be found to meet the prerequisites for certification under Rule 23. *See, e.g., Connell v. Heartland Express, Inc.*, C19-9584, 2021 WL 4296207, at *2 (C.D. Cal. June 10, 2021) (citing *Hanlon*, 150 F.3d at 1020, 1026. Under Rule 23(a), a court may certify a class only if: (1) the class is so numerous joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) a representative party's claims or defenses are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The court must also find satisfaction of at least one of three alternative conditions set forth in Rule 23(b), including, as relevant to this case: (1)

1    that questions of law or fact common to members of the class predominate over any questions

2    affecting only individual members, and (2) that a class action is superior to other available

3    methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  In

4    undertaking this inquiry, the Court accepts the allegations in the complaint as true so long as they

5    are sufficiently specific to permit an informed assessment as to whether the requirements of Rule

6    23 have been satisfied.  *Blackie v. Barrack*, 524 F.2d 891, 901 & n.17 (9th Cir. 1975).

7            In this case, the Court separately recommends certification of a class consisting of the

8    following:  "All persons who purchased ATMI tokens via a Series 1 or Series 2 SAFT with

9    Atonomi, LLC in 2018[,]" excluding "Defendants and persons or entities directly affiliated with

10   any Defendant, and persons who affirmatively assented to the Atonomi 'Terms of Token Sale.'"

11   Dkt. 197 at 5.   The proposed Settlement Class is defined to include both the members of that

12   litigation class and all individuals who "purchased ATMI tokens through a 'public sale' by

13   Atonomi on or about June 6, 2018," excluding "any person, firm, trust, corporation or other

14   entity affiliated with Defendants, or any judge, justice, judicial officer or judicial staff of the

15   Court."  Dkt. 205 at 1; Dkt. 206, Ex. A.

16           In opposing preliminary approval, Non-Settling Defendants reiterate arguments raised in

17   opposition to the motion for class certification.  *See* Dkt. 211 at 13.  The Court finds the facts and

18   law set forth in relation to that litigation class equally applicable to the proposed Settlement

19   Class and declines to reiterate its conclusions herein.  The Court further finds, on preliminary

20   review, the proposed Settlement Class to sufficiently satisfy the prerequisites to certification

21   under Rule 23.

22           1.    Numerosity, Typicality, and Adequacy:

23           The proposed class consists of over 14,000 putative class members.  Dkt. 199, Ex. 16 at

REPORT & RECOMMENDATION
PAGE - 20

3.  There is no question such a class is sufficiently numerous under Rule 23(a)(1).

Plaintiff participated in the private, not public sale.  However, his claim need not be identical in order to satisfy the typicality requirement.  *See generally Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) ("[I]t is not necessary that all class members suffer the same injury as the class representative.") (citing *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoted source omitted)).  Plaintiff and the public sale investors suffered the same type of loss in purchasing ATMI tokens and pursues the same legal claim for the sale of unregistered, non-exempt securities in the same "integrated" offering ICO.  *See U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 181-82 (S.D.N.Y. 2020); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 367-68 (S.D.N.Y. 2020), *request for clarification denied*, 2020 WL 1547383, at * 1 (S.D.N.Y. Apr. 1, 2020), *appeal withdrawn*, 2020 WL 3467671 (2d Cir. May 22, 2020).  His claims are sufficiently typical under Rule 23(a)(3).

Plaintiff also, like all members of the Settlement Class, seeks payment for losses suffered through his purchase of now worthless ATMI tokens.  He has the same interest in establishing Defendants' liability and obtaining the maximum recovery for himself and the class.   His claims are, in other words, aligned with the class as a whole.  *See Melendres v. Arpaio*, 784 F.3d 1254, 1261-63 (9th Cir. 2015) (distinguishing a plaintiff's standing to bring an individual claim from the Rule 23(a) prerequisites for class certification and concluding named plaintiffs may be found "adequate representatives" where their claim does "not 'implicate a significantly different set of concerns' than the unnamed plaintiffs' claims.") (quoting *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)).  Proposed class counsel, who have actively prosecuted this matter since April 2019,

negotiated a class-wide settlement with three named Defendants, and have the pertinent

expertise, Dkt. 199, Exs. 50-52, lack any apparent conflict of interest and have demonstrated

their willingness to vigorously prosecute this action on behalf of the class.  Both Plaintiff and

class counsel are adequate to represent the class as required by Rule 23(a)(4).

   2. <u>Commonality and Predominance</u>:

   Plaintiff alleges the private and public sale participants invested in the same integrated

ICO, which allowed for the sale of non-exempt, unregistered securities in violation of the WSSA

and its imposition of strict liability for such sales.  *See* Dkts. 137, 197-98, and Report and

Recommendation on class certification.  *See also Kik Interactive Inc.*, 492 F. Supp. 3d at 181-82

(if the private pre-sale and the public sales "are considered part of the same offering, the [p]re-

Sale does not qualify for an exemption under [Rule 506(c)] of Regulation D.").  With the

exception of the relatively small number of SAFT investors, the 14,000-member proposed

Settlement Class are all arguably subject to the arbitration clause included in the Terms of Token

Sale.  *See* Dkts. 31, 40, 66; Dkt. 199, Ex. 31; and Report and Recommendation on Motion for

Class Certification.  Because analysis of the allegations raised will apply to all or virtually all

class members, there are questions common to class members and those common questions and

answers predominate over any individualized inquiries.  Fed. R. Civ. P. 23(a)(2) and 23(b)(1).

   3. <u>Superiority</u>:

   But for the Settlement, participants in the public sale could be barred from bringing

claims due to the arbitration clause included in the Terms of Token Sale.  The possibility of

individual litigation also appears unlikely given the markedly smaller amount of loss on the part

of each public sale participant.  *See* Dkt. 199, Ex. 16 at 3-4 (admitting to 14,000 public sale

participants and a total of 14,001.75 ETH raised in the public sale).  Finally, the Settlement

avoids litigation and any attendant manageability concerns.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557-58 (9th Cir. 2019) ("[I]n deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'") (quoted source omitted).  The proposed Settlement is superior to other methods for adjudicating this controversy.  Fed. R. Civ. P. 23(b)(2).

E.    Proposed Notice Form and Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Such notice may occur by mail, electronic means, or other appropriate means and must clearly and concisely state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill*, 361 F.3d at 575 (cleaned up).

The proposal for notice satisfies this standard.  It provides for, at least, direct emailing of notice to all class members and supplemental notice through social media publication and a press release, all with links to a website containing the long form notice, documents about the case, an electronic claim form, and contact information for the designated administrator.  Dkt. 206, Ex. A, ¶¶36-39 & Exs. E-F; Dkt. 207, ¶¶4-5.  *See also* Dkt. 205 at 17-18 (citing cases recognizing sufficiency of notice by email).  The notice is to be written in plain language and contains the

1   information necessary for class members to learn about the case and Settlement, the binding

2   effect of a class judgment, class counsel's requested fee and expense award and a service award

3   for Plaintiff, how to exclude themselves or object, how to file a claim and the plan of allocation,

4   the date and time of the final approval hearing, and procedures for appearing at their own

5   expense if desired. *Id*. The Court should approve the notice form and plan.

6                                        CONCLUSION

7          For the reasons discussed above, the Court should GRANT Plaintiff's Motion for

8   Preliminary Approval of Partial Class-Wide Settlement, Dkt. 205, and enter the proposed

9   Order Preliminarily Approving Settlement and Providing for Notice, Dkt. 205-1. In so doing, the

10  Court should preliminarily approve the proposed Settlement and the form and manner of

11  disseminating notice; appoint Plaintiff as Representative and his counsel as Class Counsel for the

12  Settlement Class; appoint JND as Settlement Administrator and Signature Bank as Escrow

13  Agent, *see* Dkt. 206, ¶¶27-33 and Dkt. 207; and adopt the proposed schedule. Dkt. 205-1. A

14  proposed order accompanies this Report and Recommendation.

15                                        OBJECTIONS

16         Objections to this Report and Recommendation, if any, should be filed with the Clerk and

17  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

18  Recommendation is signed. Failure to file objections within the specified time may affect your

19  right to appeal. Objections should be noted for consideration on the District Judge's motions

20  calendar for the third Friday after they are filed. Responses to objections may be filed within

21  **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will

22  / / /

23  / / /

REPORT & RECOMMENDATION
PAGE - 24

be ready for consideration by the District Judge on **December 3, 2021**.

DATED this 12th day of November, 2021.


S. KATE VAUGHAN
United States Magistrate Judge

REPORT & RECOMMENDATION
PAGE - 25