UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRIS HUNICHEN,<br><br>                Plaintiff,<br><br>     v.<br><br>ATONOMI LLC, et al.,<br><br>                Defendants.<br><br>ATONOMI LLC,<br><br>                Counterclaimant,<br><br>     v.<br><br>CHRIS HUNICHEN,<br><br>                Counter-Defendant. | CASE NO. C19-0615RAJ-SKV<br><br>ORDER |

## I.  INTRODUCTION

Before the court are: (1) the report and recommendation of Magistrate Judge S. Kate Vaughan (R&R (Dkt. # 218)); and (2) Defendant/Counter-Claimant/Third-Party

ORDER - 1

Plaintiff Atonomi LLC's ("Atonomi") objections thereto (Obj. (Dkt. # 221)). Magistrate Judge Vaughan recommends that the court grant the motion for judgment on the pleadings filed by Plaintiff/Counter-Defendant Chris Hunichen and Third-Party Defendants David Patrick Peters, Sean Getzwiller, David Cutler, Chance Kornuth, and Dennis Samuel Blieden (collectively, "Counter-Defendants"). (*See generally* R&R; *see also* MJOP (Dkt. # 171); MJOP Resp. (Dkt. # 179); MJOP Reply (Dkt. # 181).) Counter-Defendants responded to Atonomi's objections. (Obj. Resp. (Dkt. # 222).) Having carefully reviewed all of the foregoing, along with the record in this case and the governing law, the court ADOPTS IN PART the report and recommendation; DENIES Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for breach of contract and conspiracy relating to breach of contract; GRANTS Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for fraud and for conspiracy to commit fraud; and GRANTS Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for contribution.

## II.   BACKGROUND

The court ADOPTS the portions of the report and recommendation that set forth the factual and procedural background of this case because no party has objected to them. (*See* R&R at 2 (first citing 10/28/19 R&R (Dkt. # 40); and then citing 6/2/20 R&R (Dkt. # 86)).) Atonomi's claims against Counter-Defendants relate to Atonomi's sale of virtual tokens through a pre-sale in which each of the Counter-Defendants signed a Simple Agreement for Future Tokens ("SAFT") in February 2018. (*See* Atonomi Ans. to 2d Am.

Compl. (Dkt. # 170-1[1]) at 18-27 ("Counterclaims") ¶¶ 14-20); 3d Party Compl. (Dkt. # 82) ¶¶ 13-19; *see also* 2d Am. Compl. (Dkt. # 137), Ex. A ("SAFT").)  On June 6, 2018, Atonomi made the tokens more broadly available through a public sale.  (*See* Counterclaims ¶ 25; 3d Party Compl. ¶ 24.)  Atonomi delivered the tokens to Counter-Defendants and other purchasers on or around July 2, 2018.  (*See* Counterclaims ¶ 27; 3d Party Claims ¶ 27.)  Shortly thereafter, Atonomi unlocked the tokens, and the Counter-Defendants began to transfer the tokens among themselves and to other individuals, including on the IDEX trading platform.  (*See* Counterclaims ¶¶ 28-32; 3d Party Claims ¶¶ 27-37.)  Atonomi alleges that Counter-Defendants breached their SAFTs by trading the tokens (*see* Counterclaims ¶¶ 36-42; 3d Party Compl. ¶¶ 41-47); fraudulently induced Atonomi to enter into the SAFTs in violation of the Washington Securities Act ("WSA"), RCW 21.20.010, by failing to disclose their intent to trade the tokens (*see* Counterclaims ¶¶ 43-54; 3d Party Compl. ¶¶ 48-59); and conspired with one another to breach the SAFTs and to fraudulently induce Atonomi to enter into the SAFTs (*see* Counterclaims ¶¶ 55-61; 3d Party Compl. ¶¶ 60-66).  Atonomi also alleges that, to the extent it is found liable to Mr. Hunichen and the proposed class on their claim for violation of the WSA (*see generally* 2d Am. Compl.), it is entitled to contribution from Counter-Defendants.  (*See* Counterclaims ¶¶ 62-64; 3d Party Compl. ¶¶ 67-69.)

---

[1] Atonomi filed its original answer to Mr. Hunichen's second amended complaint on November 23, 2020.  (See Dkt. # 158.)  He replaced it by praecipe on December 1, 2020.  (Praecipe (Dkt. # 170); *see* Atonomi Ans. to 2d Am. Compl.)

Magistrate Judge Vaughan recommends that the court grant Counter-Defendants' motion for judgment on the pleadings on all of Atonomi's claims. (*See generally* R&R.) Atonomi objects to Magistrate Judge Vaughan's recommendation regarding each of its claims. (*See generally* Obj.)

### III.   ANALYSIS

Below, the court sets forth the standards of review and then considers Atonomi's objections.

**A.   Standards of Review**

    1.   <u>Report and Recommendation</u>

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which a party makes a specific written objection. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

    2.   <u>Motions for Judgment on the Pleadings</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact

remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The standard for dismissing claims under Rule 12(c) is "substantially identical" to the Rule 12(b)(6) standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although not a "probability requirement," this standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B.     Chambers Procedures**

As a threshold matter, the court addresses the parties' dispute regarding the undersigned's chambers procedures. The court's chambers procedures require that:

> For all cases, except applications for temporary restraining orders, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss *thoroughly*, preferably in person, the *substance* of the contemplated motion *and any potential resolution*.

Honorable Richard A. Jones, *General Motions Practice*, https://www.wawd.uscourts.gov/sites/wawd/files/JonesGeneralMotionsPractice.pdf (last visited March 29, 2022) (emphasis in original).  The court "construes this requirement strictly" and further requires that:

> *All* motions must include a declaration by counsel briefly describing the parties' discussion and attempt to eliminate the need for the motion and the date of such discussion.

*Id.* (emphasis in original).  Filings that do not comply with these rules "may be stricken." *Id.*

   Atonomi urges the court to deny Counter-Defendants' motion for failure to comply with this meet-and-confer rule. (*See* Obj. at 2 n.2; *see also* MJOP Resp. at 2-4; MJOP (failing to include the required declaration).)  Magistrate Judge Vaughan recommends that the court deny Atonomi's request because the meet-and-confer process set forth in the chambers procedures is not included in the order referring this matter to a magistrate judge or in the court's local rules and general order governing referrals to magistrate judges. (*See* R&R at 4 n.2 (first citing Local Rules W.D. Wash. MJR 6; and then citing General Order 02-19); *see also* 6/12/19 Min. Order (Dkt. # 10).)

   The court concludes that it is ambiguous whether the undersigned's chambers meet-and-confer process applies when a party files a motion in a case that has been referred to a magistrate judge.  Although the referral order states that the magistrate judge "is directed and empowered to conduct hearings and make any further necessary orders consistent with . . . the instructions of the District Judge to whom the case is assigned," it does not expressly refer to or incorporate the undersigned's chambers procedures.  (*See*

6/12/19 Min. Order.)  Accordingly, the court ADOPTS Magistrate Judge Vaughan's recommendation that it deny Atonomi's request to deny Counter-Defendants' motion for failure to comply with the chambers procedures.  In the interest of effective case management going forward, however, the court ORDERS the parties to follow its chambers procedures for all future motions filed in this case.

The court separately notes that Atonomi has used numerous lengthy footnotes, apparently in an attempt to avoid the page limitations imposed by the Local Rules.  (*See*, *e.g.*, Obj. at 2, 4-7, 10-12); *see* Local Rules W.D. Wash. LCR 72 (limiting objections to a report and recommendation to 12 pages).  Indeed, Atonomi's objection to Magistrate Judge Vaughan's recommendation regarding chambers procedures itself appears only in a footnote.  (*See* Obj. at 2 n.2; *see also* Obj. at 12 n.15 (objecting to recommendation to deny leave to amend).)  If a party wishes to raise an argument it must do so in the body of its brief, rather than in the footnotes.  The court admonishes Atonomi not to use footnotes to avoid the page limits in its future briefing.

**C.     Breach of Contract**

First, Atonomi objects to Magistrate Judge Vaughan's recommendation that the court grant Counter-Defendants' motion for judgment on the pleadings on its breach of contract claims.  (*See* Obj. at 2-6;[2] R&R at 4-11.)  Atonomi's breach of contract claims focus on ¶ 6(l) of the SAFTs, which states:

---

[2] Atonomi does not object to Magistrate Judge Vaughn's determination that Delaware law applies to the breach of contract claims.  (*See id.*)

> The Purchaser[3] will at all times maintain control of the Purchaser's wallet where any Tokens are stored, and the Purchaser will not share or disclose the account credentials associated with such wallet with any other party.  If the Purchaser transfers Tokens into another wallet or vault, the Purchaser will likewise at all times maintain control of such other wallet or vault, and will not share or disclose the account credentials associated with such other wallet or vault with any other party.

(SAFT ¶ 6(l).)  Atonomi alleges that Counter-Defendants breached ¶ 6(l) by entering into the SAFTs with the intent to trade their tokens "as soon as [they] were able to do so" for "non-utility purposes" and by subsequently transferring their tokens to wallets outside of their control.  (Counterclaims ¶¶ 21, 38-40; 3d Party Compl. ¶¶ 43-45.)

Counter-Defendants argue that dismissal of the breach of contract claims is required because (1) the SAFTs expired and terminated on July 2, 2018, when Atonomi delivered the tokens, under ¶ 1(d) of the SAFTs; (2) ¶ 6(l) did not survive the termination of the SAFTs—and could not, in light of Atonomi's admissions in prior filings before the court that token trading was necessary to support its network; and (3) even if ¶ 6(l) survived the termination of the SAFTs on July 2, 2018, it does not prohibit purchasers from trading the tokens once Atonomi unlocked them.  (*See* MJOP at 3-5; Obj. Resp. at 5-8.)

The termination provision in ¶ 1(d) provides,

> This instrument will expire and terminate (without relieving the Company of any obligations arising from a prior breach of or non-compliance with this instrument) upon either (i) the delivery of the Tokens to the Purchaser pursuant to Section 1(a); or (ii) the payment, or setting aside for payment, of amounts due the Purchaser pursuant to Section 1(b).

---

[3] The "Purchaser" is the individual who signed and entered into the SAFT with Atonomi.  (*See* SAFT at 2, 10.)

ORDER - 8

(SAFT ¶ 1(d).)  Magistrate Judge Vaughan concluded that ¶ 1(d) is "clear and unambiguous and would be read by an objective, reasonable third party as reflecting that, except for ongoing obligations on the part of Atonomi, the SAFT terminated with token delivery." (R&R at 10.)  She rejected Atonomi's argument that the contract is ambiguous due to an internal conflict between ¶ 1(d) and ¶ 6(l), finding that ¶ 6(l) "does not address the transferring of *tokens* from Counter-Defendants to another party" but rather "obligates a purchaser to maintain control of any wallet or vault in which the purchaser stores tokens and proscribes a purchaser from sharing the *credentials* associated with any such wallet or vault another party." (*Id.* at 10-11 (emphasis in original).)  She further found that ¶ 6(l)'s "wallet control provision" could not be "rationally construed as prohibiting the transfer of sale of tokens from the purchaser to another party," particularly where Atonomi has admitted that trading tokens was necessary to its success.  (*Id.* at 11; *see also* MJOP Resp. at 10 (stating that the success of its network depended on developers acquiring tokens).)  Thus, Magistrate Judge Vaughan concluded that "there is no conflict between the wallet control and termination provisions or any contractual ambiguity that would allow for a conclusion that a sale of tokens after delivery to Counter-Defendants constituted a breach of the SAFT" and that based on that conclusion, the court "need not . . . resolve whether the wallet control provision can be read to survive the termination of the SAFT." (*Id.*)

Atonomi argues that Magistrate Judge Vaughan erred in concluding that ¶ 6(l) cannot be rationally construed to prohibit the transfer or sale of tokens from the purchaser to another party. (Obj. at 2.)  Rather, according to Atonomi, ¶ 6(l) must be read to

require purchasers—that is, the signatories to the SAFTs—to maintain control of the wallets in which they store the tokens or to which they transfer the tokens. (*Id.*) Thus, although ¶ 6(l) allows purchasers to transfer their tokens to a wallet or vault under their own control, it prohibits purchasers from (1) transferring tokens to a wallet or vault controlled by someone else or (2) sharing the credentials of their own wallets or vaults with another person. (*Id.* at 2-3.)

On de novo review, the court agrees with Atonomi that Magistrate Judge Vaughan erred in concluding that that ¶ 6(l) cannot be read to prohibit the transfer of tokens from the purchaser to another party. Magistrate Judge Vaughan's interpretation of the ¶ 6(l) prohibition focuses on the sharing of credentials but does not take into account the requirement that the purchaser maintain control of any wallet or vault in which the tokens are stored or to which they are transferred. Accordingly, the court agrees with Atonomi that the obligations set forth in ¶ 6(l) are, at minimum, ambiguous.

The court's analysis, however, does not stop here. If ¶ 6(l) can be read to prohibit the purchaser from transferring tokens from a wallet he or she controls to a wallet controlled by another, the court must consider the issue that Magistrate Judge Vaughan deferred: whether ¶ 6(l)'s wallet control provision survived the termination of the SAFTs upon Atonomi's delivery of the tokens to Counter-Defendants under ¶ 1(d).[4] Atonomi insists that it did, because Counter-Defendants could not transfer tokens to other wallets

---

[4] Atonomi does not object to the conclusion that the SAFTs terminated upon token delivery, but it contends that Magistrate Judge Vaughn erred when she did not address whether SAFT ¶ 6(l) survived termination. (*See* Obj. at 6-8.)

ORDER - 10

until Atonomi released the tokens to their wallets—the same event that triggers termination of the SAFTs. (Obj. at 6; *see* SAFT ¶ 1(d).) Because the SAFT does not specify when purchasers could begin to trade their tokens after delivery, Atonomi urges the court to imply that purchasers were prohibited from trading until a "reasonable" amount of time passed. (Obj. at 5.) It asserts that by transferring tokens to wallets outside of their control on the day Atonomi unlocked the tokens, Counter-Defendants did not wait a "reasonable" amount of time to conduct those transfers and, as a result, breached ¶ 6(l). (*Id.*) It further contends that how "reasonable" is defined in this case will depend on extrinsic evidence. (*Id.*) Counter-Defendants argue that the only possible "reasonable" time is the date Atonomi itself unlocked the tokens for trading, thus "freely allowing any token holder to trade any amount of tokens at any price the market would bear, with no suggestion to any person of any restriction." (Obj. Resp. at 7-8.) The court concludes that it cannot decide, based on the pleadings before it, how to define a "reasonable" time for token holders to wait before commencing trading. Rather, in light of the existing ambiguities, the interpretation of ¶ 6(l) will depend on extrinsic evidence. Accordingly, the court DECLINES to adopt Magistrate Judge Vaughan's recommendation to dismiss Atonomi's breach of contract claims and DENIES Counter-Defendants' motion for judgment on the pleadings on the breach of contract claims.[5]

---

[5] Counter-Defendants also assert that Atonomi's breach of contract claims must fail because its allegations of damages are too "speculative and conjectural." (Obj. Resp. at 8-10.) The court disagrees, and concludes that Atonomi has adequately pleaded that it suffered damages

**D.  Fraud**

Second, Atonomi objects to Magistrate Judge Vaughan's recommendation that the court dismiss its fraud claims. (Obj. at 8-11.) The WSA provides that it is unlawful to "employ any device, scheme, or artifice to defraud" or to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading" in connection with the offer, sale, or purchase of any security. (Counterclaims ¶ 46 (quoting RCW 21.20.010); 3rd Party Compl. ¶ 51 (same).) Atonomi alleges that Counter-Defendants committed fraud in violation of the WSA based on the following representation in ¶ 6(b) of the SAFTs:

> The Purchaser is purchasing this instrument for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and the Purchaser has no present intention of selling, granting any participation in, or otherwise distributing the same.

(SAFT ¶ 6(b); *see* Counterclaims ¶¶ 47-50; 3d Party Compl. ¶¶ 52-55.) Atonomi asserts that, contrary to this representation, Counter-Defendants intended to "trade, attempt to sell, and/or sell Atonomi tokens contrary to their utilitarian purposes" and entered into agreements to trade the tokens among one another and with third parties before they entered into the SAFTs. (Counterclaims ¶¶ 45-48; 3rd Party Compl. ¶¶ 50-53.)

Magistrate Judge Vaughan recommends that the court dismiss the fraud claims because, by its terms, ¶ 6(b) relates only to purchases, sales, and distributions of the

---

in an amount to be proven at trial as a result of the alleged breaches. (*See* Counterclaims ¶¶ 28, 41; 3d Party Compl. ¶¶ 33, 46.)

SAFTs, rather than tokens. (R&R at 11-14.) Atonomi objects, insisting that ¶ 6(b) refers to both the SAFTs and tokens. (Obj. at 8.) It reasons that "every reference to 'distribution' in Section 6" of the SAFT "refers to the distribution of . . . Tokens." (*Id.* at 8-9.) On de novo review, however, the court agrees with Magistrate Judge Vaughan's conclusion that the "instrument" at issue in ¶ 6(b) and elsewhere in the SAFT is "clearly and unambiguously" the SAFT itself. (*See* R&R at 13.) As Magistrate Judge Vaughan observed, the SAFT is defined as "an instrument containing a future right to Tokens, similar in form and content to this instrument, sold by the Company for the purpose of generating future revenue" (SAFT ¶ 2), and the SAFT "repeatedly differentiat[es] between the 'instrument' and . . . tokens." (R&R at 13-14 (citing SAFT ¶¶ 1(a), 1(d), 6(d)).) The court agrees that "interpreting [¶] 6(b) to bar token trading would unreasonably require giving a meaning to the word 'instrument' not applicable to any other provision in the contract." (*Id.* at 14.) Thus, because Atonomi makes no allegation that Counter-Defendants made any misrepresentation regarding their intent to sell or trade the SAFTs, Atonomi's claims for fraud must fail. The court ADOPTS Magistrate Judge Vaughan's recommendation that it dismiss Atonomi's fraud claims; GRANTS Counter-Defendants' motion to dismiss the fraud claims; and DISMISSES those claims with prejudice.

**E.      Civil Conspiracy**

Atonomi objects to Magistrate Judge Vaughan's recommendation that the court dismiss Atonomi's civil conspiracy claims because, under her analysis, neither of the underlying claims for breach of contract or for fraud survive. (Obj. at at 11.) On de novo

review, the court agrees with Magistrate Judge Vaughan that Atonomi's claims for civil conspiracy must be dismissed to the extent they rely on the underlying fraud claims. (R&R at 14-15.)  Because the court has declined to adopt Magistrate Judge Vaughan's recommendation to dismiss the breach of contract claims, however, it must determine whether Atonomi has stated a claim for civil conspiracy based on Counter-Defendants' alleged breaches of contract.  Counter-Defendants have argued only that the court must dismiss the civil conspiracy claims because the underlying claims must be dismissed. (*See* MJOP at 8; MJOP Reply at 11; Obj. Resp. at 11.)  Because Counter-Defendants have made no argument that a civil conspiracy cannot be based on an underlying breach of contract, the court ADOPTS in part Magistrate Judge Vaughan's recommendation that it dismiss the civil conspiracy claims; GRANTS in part Counter-Defendants' motion for judgment on the pleadings on Atonomi's claims for civil conspiracy; and DISMISSES Atonomi's claim for civil conspiracy to the extent it is based on its underlying allegations of fraud.

**F.    Contribution**

Atonomi objects to Magistrate Judge Vaughan's recommendation that the court dismiss its claims for contribution. (Obj. at 11-12; see R&R at 15-16.)  It relies on RCW 21.20.430(2), which states:

> Any person who buys a security in violation of the provisions of RCW 21.20.010 is liable to the person selling the security to him or her, who may sue either at law or in equity to recover the security, together with any income received on the security, upon tender of the consideration received, costs, and reasonable attorneys' fees, or if the security cannot be recovered, for damages.  Damages are the value of the security when the buyer disposed of it, and any income received on the security, less the consideration received

>for the security, plus interest at eight percent per annum from the date of disposition, costs, and reasonable attorneys' fees.

RCW 21.20.430(2).  RCW 21.20.010, in turn, states:

>It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
>(1) To employ any device, scheme, or artifice to defraud;
>(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW 21.20.010.  Magistrate Judge Vaughan recommends dismissing the claim because "Atonomi does not set forth a plausible claim for fraud or any other claim that would provide a basis for Counter-Defendants' contribution in the event Atonomi is found liable under the [WSA]." (R&R at 16.)  Because, on de novo review, the court agrees that Atonomi has not set forth a plausible claim for fraud or other conduct that would violate RCW 21.20.010, the court ADOPTS Magistrate Judge Vaughan's recommendation; GRANTS Counter-Defendants' motion for judgment on the pleadings on Atonomi's contribution claim; and DISMISSES Atonomi's contribution claims.

G.     **Leave to Amend**

Finally, Atonomi argues, in a lengthy footnote, that if the court dismisses any of its claims, it should do so without prejudice and with leave to amend.  (Obj. at 12 n.15.)  It asserts, for example, that it can set forth allegations that Mr. Hunichen committed additional breaches of the SAFT that it did not include in its original or amended counterclaims.  (*Id.* (describing alleged breaches of ¶ 1(a) and ¶ 6(l)).)

ORDER - 15

Magistrate Judge Vaughan correctly stated that leave to amend should be freely given:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

(R&R at 17 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).) She concluded that there was "no basis for concluding the defects described [in the report and recommendation] could be cured by amendment" and thus, in light of the "more advanced state of these proceedings," "justice would not be served by allowing leave to amend." (*Id.*) On de novo review, the court agrees with Magistrate Judge Vaughan that amendment to cure the deficiencies identified in the counterclaims and third-party claims asserted by Atonomi and discussed in this order would be futile. Accordingly, the court ADOPTS Magistrate Judge Vaughan's recommendation that it deny leave to amend the dismissed claims and dismisses those claims with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the court ADOPTS IN PART the report and recommendation (Dkt. # 218) and, accordingly, GRANTS IN PART and DENIES IN PART Counter-Defendants' motion for judgment on the pleadings (Dkt. # 171). Specifically, the court:

1. DENIES Atonomi's request to deny Counter-Defendants' motion for failure to comply with the undersigned's chambers procedures and ORDERS the parties to follow its chambers procedures when filing motions in the future;

2. DENIES Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for breach of contract;

3. GRANTS Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for fraud and DISMISSES those claims with prejudice;

4. GRANTS IN PART Counter-Defendants' motion for judgment on the pleadings on Atonomi's counterclaim and third-party claims for civil conspiracy and DISMISSES those claims with prejudice to the extent they rely on its underlying fraud claims;

5. GRANTS Counter-Defendants' motion for judgment on the pleadings on Atonomi's counter-claim and third-party claims for contribution and DISMISSES those claims with prejudice; and

6. DIRECTS the Clerk to send copies of this order to the parties and to Magistrate Judge Vaughan.

Dated this 31st day of March, 2022.

*(signature)*

The Honorable Richard A. Jones
United States District Judge